## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **BOND PHARMACY, INC., d/b/a AIS HEALTHCARE,** | ) ) ) ) **Case No.** |
| **Plaintiff,** | ) ) |
| v. | ) **COMPLAINT FOR DAMAGES** ) **AND DECLARATORY RELIEF** ) |
| **THE HEALTH LAW PARTNERS, P.C.,** | ) ) **JURY TRIAL DEMANDED** |
| **Defendant.** | ) ) |

## COMPLAINT

Plaintiff Bond Pharmacy, Inc., d/b/a AIS Healthcare ("AIS"), brings this Complaint for damages and declaratory relief against The Health Law Partners, P.C. ("HLP"), and alleges as follows:

## INTRODUCTION

1.      AIS brings this lawsuit to put an end to HLP's intentional interference with AIS's business and contractual relationships.  HLP's unlawful interference and misconduct have caused AIS to suffer significant harm by causing payors improperly to deny AIS's claims in breach of its provider agreements, disrupting its business relationships, and poisoning AIS's reputation in the marketplace, among other serious harms.

-1-

2.     AIS is a private compounding pharmacy based in Mississippi and a leading provider of home infusion therapy ("HIT") services.  AIS cares for the nation's sickest patients suffering from severe conditions, such as multiple sclerosis and cancer.  Through AIS's specialized HIT, its patients are able to receive custom medications through surgically-implanted intrathecal pumps that deliver targeted relief daily.

3.     With these therapies, AIS's patients can go on with their daily lives while receiving vital treatment at home or wherever they go.  Without HIT, these patients would remain confined to a hospital bed or addled on oral opioids subject to their well-known devastating side effects.

4.     While these patients are on service with AIS, they also necessarily remain under its care as AIS remains responsible for the medication infused through their pumps.  AIS provides its patients with access to a host of ongoing care and services, such as clinical services, coordination of patient care, 24/7/365 patient monitoring, nursing services, and billing support services.

5.     Recognizing the substantial value and quality of AIS's therapy, many payors have contracted for AIS to provide its vital care to their members and networks.  And for years, AIS has provided thousands of member patients with life-changing therapies and services.

6.      But behind the scenes, HLP, a law firm operating in the healthcare space, has contacted many of these payors to interfere with AIS's contractual relationships and harm the company.

7.      For the last three years, HLP has falsely informed payors that AIS's billing practices are fraudulent and fail to comply with coverage standards and provider agreements.

8.      HLP has also falsely informed third parties – without any basis whatsoever – that AIS has violated payor billing standards as well as federal and state laws and regulations.

9.      HLP has further accused AIS of having an unfair advantage in the marketplace and encouraged payors unilaterally to amend their policies and agreements with AIS to decrease – if not totally eliminate – reimbursements for AIS's care and services.

10.     HLP's unlawful conduct has caused AIS to suffer serious and ongoing harm.

11.     By intentionally interfering with AIS's contractual relationships, HLP has caused payors to breach their agreements with AIS by denying claims and recouping payments.

12.     HLP has also harmed AIS's reputation and goodwill by making false and disparaging claims about the company.

13.    AIS has further had to devote significant time and resources to address HLP's misconduct, thereby disrupting AIS's operations and harming the enterprise value of the company.

14.    AIS now brings this litigation to obtain damages from HLP, including punitive damages, and declaratory relief for the harms it has caused – and continues to cause – the company.

## PARTIES

15.    AIS is incorporated in Mississippi with its principal place of business in Clinton, Mississippi.

16.    The Health Law Partners, P.C., is a professional corporation incorporated in Michigan with a principal place of business located in Farmington Hills, Michigan.[1]

## JURISDICTION AND VENUE

17.    The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties.

18.    For purposes of diversity jurisdiction, a corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of

---

[1]  Upon information and belief, and based on public and state records, HLP operates The Dresevic, Iwrey, Kalmowitz & Pendleton Law Group ("Dresevic") as a New York division/ office of HLP and not as a separate and distinct legal entity.  AIS reserves the right to amend this complaint and/ or assert claims against Dresevic should the record demonstrate otherwise.

business. *See* 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

19.     AIS is a citizen of Mississippi because it is incorporated and has its principal place of business in Mississippi.

20.     HLP is a citizen of Michigan because it is incorporated and has its principal place of business in Michigan.

21.     The parties are therefore diverse for jurisdictional purposes.

22.     The amount in controversy also far exceeds the sum or value of $75,000. *See* 28 U.S.C. § 1332(a). HLP has intentionally engaged in unlawful conduct and practices that have caused AIS to suffer damages well in excess of the jurisdictional amount, such as causing payors to deny claims and recoup payments totaling millions of dollars, along with harm to its reputation and goodwill.

23.     The Court also has general personal jurisdiction over HLP because it is incorporated and has its principal place of business in Michigan. *See Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014).

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because HLP resides in this District and engaged in its unlawful conduct in this District.

## FACTUAL ALLEGATIONS

### *AIS Provides Specialized HIT Services*

25.     AIS is a licensed compounding pharmacy and healthcare provider that offers specialty HIT and related services.

26.     HIT is the creation, dispensing, and infusing of medication by non-oral means.[2]

27.     Under this therapy, patients receive a continuous, daily treatment at home – as opposed to an in-patient, hospital setting – and can resume normal lifestyles and work activities while recovering from illness.

28.     If HIT were not available, these patients would either have to take mind-addling oral opioids (and be exposed to their potentially devastating side-effects), or live out their days in an in-patient treatment facility.

29.     HIT is typically prescribed for patients who have serious and abiding illnesses such as chronic pain resulting from cancer, multiple sclerosis, spinal cord injuries, or other debilitating conditions.

30.     AIS operates in a specialized area of HIT.  It develops and dispenses patient-specific compounded medications at the direction of a patient's treating physician that are continuously infused via implanted intrathecal pumps.

---

[2]  NHIA, *About Home And Alternate Site Infusion*, https://nhia.org/about-infusion-therapy/ (last visited December 4, 2023).

31.     These pumps, which are prescribed by a patient's treating physician, are surgically placed under the patient's skin and filled with medication that the pump delivers through a catheter to the spinal column wherever the patient is located.[3]

32.     Intrathecal pumps can administer a patient's medication daily for up to 180 days before needing to be refilled.  However, the medications used for intrathecal pumps have to be specially prepared for each patient to remain stable, effective, and dispense daily.

33.     AIS is one of the largest providers of intrathecal HIT services in the United States and licensed to operate in all 50 states.

34.     As a specialized compounding pharmacy, AIS provides bespoke patient medications that are administered through intrathecal pumps.

35.     But AIS does more than develop custom, sterile, effective, and stable drugs that are administered through patients' implanted pumps.  AIS also provides all patients with access to a host of ongoing care and services, such as clinical services, coordination of patient care, nursing services, and billing support services.

---

[3]  Mayfield Clinic, *Pain Pump*, at 1, https://d3djccaurgtij4.cloudfront.net/pe-pain-pump.pdf (last visited December 4, 2023).

36.     AIS's HIT therapies and services are the gold standard in the industry because it invests substantial resources into developing the safest and most sterile medications in the industry.

37.     Through its therapy and care services, AIS has developed goodwill and relationships with patients, treating physicians, and payors.

38.     Given the nature of this highly specialized therapy, the patient population for intrathecal HIT is very limited.  Thus, every patient, physician, and payor relationship is extremely valuable to AIS's success and growth.

39.     Recognizing the substantial value and quality of AIS's therapy, many payors have developed business relationships and contracted with AIS to provide HIT care and services to their most vulnerable members.

40.     For example, in 2019, AIS entered over a dozen state-specific provider agreements with Anthem (now known as Elevance Health, but referred herein as Anthem), one of the largest payors in the United States, to provide HIT to its members.

41.     Under its provider agreements with Anthem, AIS agreed to provide intrathecal HIT services to Anthem's members, and Anthem agreed to pay AIS for its HIT services to its members in accordance with the National Home Infusion Association's ("NHIA's") per diem reimbursement model.  Provider Agreement §§ 2.6 & 8.1.

-8-

42.     Under that model, AIS bills a HIT-specific billing code – HCPCS Code S9328 – each day a patient has access to a prescribed therapy – that is, AIS's medication. *See id.*, Plan Compensation Schedule.

43.     Code S9328 covers "[h]ome infusion therapy, implanted pump pain management infusion; administrative services, professional pharmacy services, care coordination, and all necessary supplies and equipment (drug and nursing visits coded separately), per diem."[4]

44.     Code S9328 applies specifically to intrathecal HIT providers, like AIS, and may be billed each day the patient is on the pump and has access to AIS's medications.[5]

45.     In line with many other payors, Anthem contracted for AIS to bill its Code S9328 claims under the per diem reimbursement model, and Anthem was required to pay AIS's claims under the agreements. *See id.* PCS Attachment § III.

### HLP Knowingly And Intentionally Interferes With AIS's Relationships

46.     Although the per diem reimbursement model is valid and the industry standard, on or about 2020, HLP began to disparage AIS by contacting Anthem –

---

[4]  NHIA, *National Coding Standard for Home Infusion Claims under HIPAA* at 112, https://nhia.org/wp-content/uploads/2023/01/NHIA_Code_Std.pdf (last visited December 4, 2023).

[5]  *Id.*

and other payors – with the sole motivation of harming AIS and its contractual and business relationships.

47.    HLP first contacted an Anthem entity in Indiana by phone and in writing to falsely accuse AIS of improper billing practices.

48.    AIS had entered a provider agreement specifically with the Anthem Indiana entity, and HLP knew of that contract and relationship.

49.    HLP contacted Anthem on behalf of and as an agent of clients in the pharmacy industry and physician practices that administer intrathecal pain medications in-office for patients with implanted pumps.

50.    HLP contacted Anthem on behalf of its "HLP Clients" to disseminate false and defamatory statements about AIS for the specific purpose of destroying AIS's reputation and contractual relationship with Anthem and other payors and improve its clients' positions in the market.

51.    HLP had full knowledge of AIS's business and contractual relationship with Anthem, including their provider agreements.

52.     In its communications with Anthem, HLP admitted to contacting Anthem for the specific purpose of harming AIS and its market position.

53.    HLP claimed it wanted to ensure that all affected providers in the industry were "treated equally," and that AIS enjoyed no "unfair advantage" in competing for physician practice in-office pain clinic pharmacy business.

54.     HLP pursued its plan with respect to Anthem despite the fact that numerous payors besides Anthem have widely recognized the legitimacy of the per diem reimbursement model and adopted it as part of their intrathecal HIT billing policies and agreements.[6]

55.     Still, HLP knowingly and willfully told Anthem that AIS was violating provider manuals, providing improper inducements to physicians and patients, conducting improper billing, and violating state and federal regulations.

56.     HLP even quoted and used screenshots of Anthem's provider agreements with AIS to provide ways for Anthem to stop paying AIS and AIS's supposed "violations."

57.     HLP also proposed unilateral amendments and interpretations to Anthem's agreements with AIS, including exclusions intended to eliminate payments to AIS altogether.

58.     Every assertion HLP made concerning AIS was (and is) false and lacks any factual basis whatsoever.

---

[6]  *See* https://www.bcbsil.com/docs/provider/il/standards/cpcp/cpcp019-12222022.pdf (last visited December 4, 2023); https://www.bcbstx.com/docs/provider/tx/standards/clinical-pay-coding/cpcp019-home-infusion-12202021.pdf (last visited December 4, 2023); https://www.bluecrossmn.com/sites/default/files/DAM/2021-07/General-Coding-031-Home-Infusion.pdf (last visited December 4, 2023).

59.     HLP further knew that these statements were false when it made them and acted intentionally and with malice to harm AIS and AIS's contractual relationship with Anthem, as well as its reputation.

60.     After HLP published these false statements, they were widely circulated among key decisionmakers at Anthem, who were in charge of Anthem's HIT contracting department and negotiations with AIS.

61.     On or around December 4, 2020, HLP, on behalf of the same "HLP Clients," contacted another Anthem entity, Empire Blue Cross Blue Shield in New York ("Empire"), to make the same false allegations against AIS.

62.     HLP's allegations were circulated and published throughout Anthem's offices and departments.

63.     AIS had entered a provider agreement with Empire to provide intrathecal HIT care and services that was substantially similar to its agreement with Anthem's Indiana entity.

64.     HLP knew of the agreement between Empire and AIS at the time it made its false statements and allegations about AIS.

65.     Less than a month later, on January 4, 2021, an audit referral was sent to Anthem's national investigation team to look into AIS in response to HLP's outreach in Indiana and New York.

66.     HLP contacted Anthem Indiana yet again on May 13, 2021, accusing AIS of "misusing" and improperly billing Code S9328.

67.     Later, on June 4, 2021, HLP contacted Empire a second time to falsely allege that AIS fraudulently obtained funds from Blue Cross Blue Shield plans.

68.     Following HLP's numerous outreaches and false statements to Anthem, Anthem eventually disputed and denied thousands of AIS's Code S9328 claims based on the exact same unfounded allegations initially made by HLP – namely, that AIS was not in compliance with Anthem's provider agreements.

69.     Anthem went on to deny AIS's Code S9328 claims and refused to pay for AIS's services despite having previously approved AIS's billing practices without any issue.

70.     Anthem directly breached and violated its agreements with AIS under the guise of a purported investigation of complaints against AIS's billing practices – complaints that HLP willfully and knowingly fed Anthem to gin up a basis for its breaches and misconduct.

71.     Anthem continues to deny many thousands of AIS's claims and seeks to recoup payments while relying on the foundation of HLP's false statements.

72.     Additionally, Anthem unilaterally amended its agreements multiple times to reduce the rates of reimbursement and hinder AIS's ability to receive compensation for its Code S9328 claims.

73.     Anthem even sought to implement HLP's proposed exclusions to avoid paying AIS under the parties' agreements.

74.     On information and belief, HLP has knowingly and intentionally contacted other payors in addition to Anthem and made similar false and disparaging statements about AIS and its billing practices.

### *HLP's Unlawful Conduct Has Caused – And Continues To Cause – AIS To Suffer Serious And Substantial Harm*

75.     HLP has engaged in unlawful and willful misconduct against AIS to harm the company in multiple ways.

76.     HLP has intentionally and knowingly disparaged AIS to harm the company and cause third-parties to breach their obligations to AIS and disrupt AIS's business relationships.

77.     HLP knowingly made false statements to payors that AIS has:

- Fraudulently billed claims using Code S9328;

- Unlawfully induced physician practices and patients using unlawful payment models;

- Violated its provider agreements;

- Violated federal and state regulations;

-14-

- Obtained an unlawful and unfair competitive advantage relative to other HIT providers; and

- Falsely billed for HIT claims without providing services or care.

78. Despite being aware that its statements were false, HLP willfully and knowingly made them to Anthem, which were then disseminated to its HIT contracting department.

79. On information and belief, HLP has willfully and knowingly made the same or similar false and disparaging statements about AIS to other payors in the marketplace.

80. Having full knowledge of AIS's business and contractual relationships with payors, HLP induced payors, such as Anthem, to breach its obligations to AIS.

81. On information and belief, HLP has also urged other payors to breach their agreements by making false and disparaging statements about AIS and its services.

82. Through its intentional interference and misconduct, HLP has caused AIS to suffer serious and ongoing harms.

83. HLP has induced payors to breach their agreements with AIS by improperly denying its claims and recouping payments, causing AIS to suffer millions of dollars in damages.

84.    HLP has further harmed AIS's reputation and goodwill in the marketplace by making false and disparaging statements to payors and other third-parties.

85.    HLP's misconduct has also distracted AIS's key management and personnel from their regular duties, thereby imposing an undue burden on the company's management and adversely impacting its overall value and operations.

## CAUSES OF ACTION

### COUNT I
**(Tortious Interference with Contract)**

86.    AIS realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 85 of this Complaint as if fully set forth herein.

87.    AIS had valid provider agreements with several Anthem entities and payors across the United States.

88.    HLP had knowledge of AIS's agreements.

89.    Out of ill will, malice, and a specific desire to harm AIS, HLP employed improper methods to interfere with AIS's contractual relationships with payors.

90.    HLP knowingly and willfully made false statements to payors that AIS has:

- Fraudulently billed claims using Code S9328;

- Unlawfully induced physician practices and patients using unlawful payment models;

- Violated its provider agreements;

- Violated federal and state regulations;

- Obtained an unlawful and unfair competitive advantage relative to other HIT providers; and

- Falsely billed for HIT claims without providing services or care.

91.    HLP was aware that these statements were untrue and false when it made them.

92.    HLP further encouraged Anthem and other payors to improperly amend and enforce their provider agreements to exclude payment for AIS's claims and services without any basis.

93.    HLP was not justified or privileged in interfering with AIS's contractual relationships with Anthem and other payors.

94.    HLP acted with a reckless and conscious disregard for AIS's rights by willfully and intentionally acting to thwart AIS's contractual relationship with Anthem, Blue Cross Blue Shield entities, and other payors.

95.    As a result of HLP's intentional interference, Anthem and other payors breached their agreements with AIS by denying AIS's properly billed claims and recouping payments.

96.    HLP's intentional interference with AIS's contractual relationships has caused AIS substantial monetary harm.

97.     Additionally, AIS has had to devote significant time and resources to address HLP's misconduct, thereby disrupting AIS's operations and harming the value of the company.

98.     HLP's misconduct and intentional interference has further harmed AIS's reputation and goodwill in the marketplace.

99.     AIS is entitled to damages, including punitive damages, and declaratory relief, as well as all other available remedies, as set forth in its Prayer for Relief.

## COUNT II
### (Tortious Interference With Business Relations/ Expectancy)

100.    AIS realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 85 of this Complaint as if fully set forth herein.

101.    As a leading provider of intrathecal HIT services that provides care for a niche patient population, AIS maintains an economic and business expectancy that it will continue to provide services and care for its patients.

102.    AIS's payor relationships, such as those with Anthem and Blue Cross Blue Shield entities, are vital for AIS's growth and development in the marketplace.

103.    HLP knew of AIS's business expectations and relationships.

104.   HLP intentionally and maliciously interfered with AIS's payor relationships by repeatedly make false statements to Anthem and other payors regarding AIS in order to unfairly and unlawfully aid its clients in the marketplace.

105.   HLP knowingly and intentionally made numerous false statements about AIS's billing practices under the agreements to Anthem.

106.   HLP falsely told Anthem that AIS was billing improperly under the agreements and not in compliance with Anthem's requirements.

107.   HLP further falsely informed Anthem and other payors that AIS was violating laws, regulations, and provider manuals.

108.   HLP further falsely informed Anthem and other payors that AIS was being treated more favorably than other providers in the industry and had an unfair advantage in the market related to its billing practices and contract terms.

109.   HLP was aware that these statements were false and untrue when it made them.

110.   HLP was not justified or privileged in interfering with AIS's payor and business relationships.

111.   HLP made these statements with the sole purpose and intent of harming AIS.

112.   HLP's intentional interference with AIS's relationships has caused AIS substantial monetary harm, including by not limited to disruptions with its

relationship with Anthem and other payors that have resulted in the denial/ non-payment of claims and recoupments, among other harms.

113.    Additionally, AIS has had to devote significant time and resources to address HLP's misconduct, thereby disrupting AIS's operations and harming the value of the company.

114.    HLP's misconduct and intentional interference has further harmed AIS's reputation and goodwill in the marketplace.

115.    AIS is entitled to damages, including punitive damages, and declaratory relief, as well as all other available remedies, as set forth in its Prayer for Relief.

## COUNT III
## (Declaratory Judgment Pursuant To 28 U.S.C. § 2201)

116.    AIS realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 85 of this Complaint as if fully set forth herein.

117.    An actual and justiciable controversy exists concerning whether HLP has tortiously interfered with AIS's agreements with Anthem by causing Anthem and other payors to breach those agreements.

118.    An actual and justiciable controversy also exists concerning whether HLP has tortiously interfered with AIS's business relationships and expectancies with payors.

119.   AIS alleges that HLP knowingly and intentionally interfered with AIS's contractual and business relationships, while HLP disputes these allegations.

120.   Pursuant to 28 U.S.C. § 2201, a judicial determination of the respective rights of the parties is necessary and appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, AIS prays for this Court to enter judgment against HLP, granting the following relief:

1.   Declarations that:

- HLP tortiously interfered with AIS's contractual relationships with Anthem and other payors; and

- HLP tortiously interfered with AIS's business relationships with Anthem and other payors;

2.   Actual damages in an amount to be proven at trial;

3.   Punitive damages in an amount to be proven at trial;

4.   Attorney's fees and costs, as permitted by law;

5.   Pre-judgment and post-judgment and other interest on all monetary damages, as permitted by law; and

6.   Any and all such further relief the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, AIS demands a trial by jury in this action on all issues so triable as of right.

Dated: December 4, 2023

/s/ Larry R. Jensen

Larry R. Jensen
Hall, Render, Killian, Heath & Lyman
101 W. Big Beaver Rd., Suite 745
Troy, MI 48084
Telephone: 248-740-7505
ljensen@hallrender.com

Paul Werner
Imad Matini
Sheppard, Mullin, Richter & Hampton LLP
2099 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone: 202-747-1931
Facsimile: 202-747-3817
pwerner@sheppardmullin.com
imatini@sheppardmullin.com

*Attorneys for Plaintiff*