UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOND PHARMACY, INC., *d/b/a* AIS         )
HEALTHCARE,                              )          Case No. 2:23-cv-13069
                                         )          Hon. Linda V. Parker
        Plaintiff,                       )          Mag. David R. Grand
                                         )
v.                                       )
                                         )
THE HEALTH LAW PARTNERS, P.C.            )
                                         )
        Defendant.                       )
_____ )

**Defendant's Motion to Dismiss**

Defendant The Health Law Partners, P.C., asks this Court under Fed. R. Civ.

P. 12(b)(6) to dismiss Plaintiff Bond Pharmacy, Inc.'s complaint. In further support,

it relies on the attached brief.

On February 26, 2024, Defendant requested concurrence for its requested

relief, explaining the nature of the motion and its legal basis. At the same time,

Defendant also offered to meet with plaintiff's counsel by video conference or

telephone to discuss the requested relief. Plaintiff's counsel responded that a

meeting was unnecessary and that concurrence was denied.

Respectfully submitted,

COLLINS EINHORN FARRELL PC

*/s/ David C. Anderson*
DAVID C. ANDERSON (P55258)

1

JEFFREY R. HICKS (P74279)
*Attorneys for The Health Law Partners, P.C.*
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141
David.Anderson@ceflawyers.com
Jeffrey.Hicks@ceflawyers.com
NICHOLS LIU LLP

*/s/ Robert Rhoad*
ROBERT RHOAD
*Co-Counsel for The Health Law Partners, P.C.*
655 15th St NW #425
Washington, DC 20005
rrhoad@nicholasliu.com

Dated: February 27, 2024

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOND PHARMACY, INC., *d/b/a* AIS )
HEALTHCARE, )
          )      Case No. 2:23-cv-13069
    Plaintiff, )      Hon. Linda V. Parker
          )      Mag. David R. Grand
          )
v. )
          )
THE HEALTH LAW PARTNERS, P.C. )
          )
    Defendant. )
_____ )

**Brief in Support of Defendant The Health Law Partners, P.C.'s
Motion to Dismiss**

*Oral Argument Requested*

David C. Anderson (P55258)
Jeffrey R. Hicks (P74279)
Collins Einhorn Farrell
Phone: (248) 355-4141
David.Anderson@ceflawyers.com
Jeffrey.Hicks@ceflawyers.com
Attorneys for The Health Law Partners

Robert T. Rhoad
Nichols Liu LLP
Phone: (202) 846-9807
rrhoad@nicholsliu.com
Co-counsel for The Health Law Partners, P.C.

February 27, 2024

3

# Table of Contents

Index of Authorities ............................................................................................ 5

Index of Exhibits ................................................................................................. 7

Questions Presented ..................................................................................... 8-10

Controlling Authority ........................................................................................ 11

Introduction ...................................................................................................... 12

Background ......................................................................................................... 13

   A. Bond Pharmacy's alleged billing practices ............................................ 13

   B. The Health Law Partners gets notified of Bond Pharmacy's questionable
      billing practices. ................................................................................... 14

   C. Bond Pharmacy discovered the emails. ................................................. 18

   D. Bond Pharmacy sued Health Law Partners ........................................... 20

   E. Anthem VA prevails on Summary Judgment Motion in EDVA Action ............. 20

Legal Standard .................................................................................................. 21

Arguments ......................................................................................................... 22

   I. Immunity ................................................................................................. 22
      A. Michigan Insurance Code provides qualified immunity for reporting
         insurance fraud. ........................................................................... 22
      B. Michigan Health Care False Claim Act provides civil immunity for
         reporting suspected insurance fraud ................................................ 24
      C. The Health Law Partners is entitled to immunity ............................ 25

   II. Tortious interference with a contract ..................................................... 27
      A. Tortious interference with a contract requires a per se wrongful act or an
         act done with malice and without legal justification. ...................... 27
      B. Plaintiff fails to state a claim for tortious interference with a contract ........ 29

   III. Tortious interference with a business expectancy ............................. 30
      A. Tortious interference with a business expectancy requires an illegal,
         fraudulent, or unethical act ............................................................ 31
      B. Bond Pharmacy fails to state a claim for tortious interference with a
         business relationship. ..................................................................... 33

Conclusion and Requested Relief ................................................................... 36

## Index of Authorities

*Cases*

*Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) .................................................................. 22, 23

*Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018).... 33

*Badiee v Brighton Area Schools*, 695 N.W.2d 521, 539 (Mich. Ct. App. 2005) ............... 29

*Bassett* v. *Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ................... 23

*Bond Pharmacy, Inc., d/b/a AIS Healthcare v Anthem Health Plans of Virginia d/b/a Anthem Blue Cross Blue Shield* 1:22-cv-01343 (2022) ............................................................. passim

*BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*, 552 N.W.2d 919, 925 (Mich. Ct. App. 1996) .......................................................................................................................... 29

*Cedroni Ass'n, Inc. v. Tomblinson, Harburn Assoc., Architects, & Planners*, 821 N.W.2d 1, 3 (Mich. 2012) ......................................................................................................................... 32

*CMI Intern., Inc. v. Intermet Intern Corp.*, 649 N.W.2d 808, 812 (Mich. Ct. App. 2002) 29

*Cole v. Knoll, Inc.*, 984 F. Supp. 1117, 1134 (W.D. Mich. 1997) .......................................... 34

*Dalley v. Dykema Gossett*, 788 N.W.2d 679, 696 (Mich. Ct. App. 2010) ......................... 32

*Derderian v Genesys Health Care Sys.*, 689 N.W.2d 145 (Mich. Ct. App. 2004) ............. 29

*Derosia v. Austin*, 321 N.W.2d 760, 762 (Mich. Ct. App. 1982) ........................................ 33

*Elias v. Fed. Home Loan Mortg. Corp.*, 581 F. App'x 461, 464 (6th Cir. 2014) ................. 30

*Feyz v. Mercy Mem. Hosp.*, 719 N.W.2d 1, 14-15 (Mich. 2006) ......................................... 24

*Fisher v. Detroit Free Press, Inc.*, 404 N.W.2d 765, 767 (Mich. Ct. App. 1987) .............. 35

*Ireland v. Edwards*, 585 N.W.2d 632, 637 (Mich. Ct. App. 2009) ................................... 34

*Jim-Bob, Inc. v. Mehling*, 443 N.W.2d 451, 462-463 (Mich. Ct. App. 1989) ................... 33

*Knight Enterprises v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013) ............ 28

*L.C. v. United States*, 83 F.4th 534, 550 (6th Cir. 2023) ........................................ 22

*Lakeshore Cmty Hosp. v. Perry*, 538 N.W.2d 24 (Mich. Ct. App. 1995) ........................... 33

*Ledl v. Quik Pik Food Stores, Inc.*, 349 N.W.2d 529, 532 (1984) ........................................ 34

*Marks One Car Rental, Inc. v. Auto Club Group Ins. Co.*, 55 F. Supp. 3d 977, 983-84 (E.D. Mich. 2014) .................................................................................................... 24

*Mourad v. Marathon Petroleum Co. LP*, 129 F. Supp. 3d 517, 523 (E.D. Mich. 2015) ..... 29

*Patients and Providers v. Auto Club Ins Ass'n.*, 670 N.W.2d 569, 579-580 (Mich. Ct. App. 2003) .................................................................................................... 32

*Radu v Herndon & Herndon Investigations, Inc.*, 838 N.W.2d 720, 729 (Mich. Ct. App. 2013) .................................................................................................... 24

*Rouch v. Enquirer & News of Battle Creek Michigan*, 487 N.W.2d 205 (Mich. 1992) ...... 34

*Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 495 N.W.2d 392, 394 (Mich. Ct. App. 1992) .................................................................................................... 34

## Statutes

Mich. Comp. Law § 500.4501(f) ........................................................ 24, 26

Mich. Comp. Law § 752.1002(i) ........................................................ 26

Mich. Comp. Laws § 500.4501(e) ........................................................ 24, 26

Mich. Comp. Laws § 500.4509 ........................................................ 9, 30, 34, 36

Mich. Comp. Laws § 500.4509(1) ........................................................ 24

Mich. Comp. Laws § 752.1008a ........................................................ passim

## Questions Presented

### I.

Under MCL 500.4509 of the Michigan Insurance Code and MCL 752.1008a of the Michigan False Claim Act a person who reports suspected insurance fraud to an organization is entitled to immunity from suit, so long as they acted without malice. Malice means with knowledge of the information's falsity or in reckless disregard of its truth or falsity.

Here, The Health Law Partners communicated with insurers expressing legitimate concerns about Bond Pharmacy's suspected fraudulent billing practices. It qualified its suspicions by acknowledging that it lacked full knowledge of the situation. It emphasized that the concerns were The Health Law Partners' opinion. And it recommended the insurers conduct their own review of Bond Pharmacy's conduct.

Is The Health Law Partners entitled to immunity under Michigan law?

This Court should answer:          Yes.

The Health Law Partners answers:    Yes.

Bond Pharmacy answers:             No.

## II.

In Michigan, tortious interference with a contract requires pleading facts showing a per se wrongful act or a lawful act done with malice and without lawful justification.

Here, The Health Law Partners had concerns about Bond Pharmacy's suspected improper billing practices and reported its suspicions regarding these improper billing practices to the appropriate organizations in a manner that has been legislatively provided qualified immunity.

Did Bond Pharmacy properly state a claim for tortious interference with a contract?

This Court should answer:          No.

The Health Law Partners answers:     No.

Bond Pharmacy answers:          Yes.

9

## III.

In Michigan, tortious interference with a business relationship or expectancy requires pleading facts that show that the defendant acted in a fraudulent, unethical, or illegal manner. If defamation is alleged, a plaintiff must state specific facts showing a false statement.

Here, The Health Law Partners had concerns about Bond Pharmacy's suspected improper billing practices and reported its suspicions to the appropriate organizations in a manner that has been legislatively provided qualified immunity. And Bond Pharmacy failed to state any false statements with specificity.

Did Bond Pharmacy properly state a claim for tortious interference with a business relationship or expectancy?

This Court should answer:          No.

The Health Law Partners answers:    No.

Bond Pharmacy answers:           Yes.

10

## Controlling Authority

Mich. Comp. Laws § 500.4509 ........................................................... 9, 30, 34, 36

Mich. Comp. Laws § 752.1008a ................................................................. passim

*Dalley v. Dykema Gossett,*
  788 N.W.2d 679, 696 (Mich. Ct. App. 2010) ................................................. 32

*Knight Enterprises v. RPF Oil Co.,*
  829 N.W.2d 345, 348 (Mich. Ct. App. 2013) ................................................. 28

*Radu v. Herndon & Herndon Investigations, Inc.,*
  838 N.W.2d 720, 729 (Mich. Ct. App. 2013) ................................................. 24

*Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.,*
  495 N.W.2d 392, 394 (Mich. Ct. App. 1992) ................................................. 34

## Introduction

This case relates to a motion to compel hearing held by this Court in October 2023. As the Court may recall, The Health Law Partners received information from its confidential clients about Bond Pharmacy's suspected fraudulent billing practices and then alerted various insurers by email. Bond Pharmacy discovered the email while litigating a different case and asked this Court to compel the identities of The Health Law Partners' clients.

During the lengthy hearing on Bond Pharmacy's motion to compel, The Health Law Partners warned this Court that Bond Pharmacy had an improper purpose in pursuing the discovery it sought to compel. Bond Pharmacy proved The Health Law Partners' warnings to be well-founded.

In further retaliation for alerting insurers about its suspected fraudulent billing practices, Bond Pharmacy has now sued The Health Law Partners. The complaint alleges one count of tortious interference with a contract and one count of tortious interference with a business relationship or expectancy. Both claims fail as a matter of law.

First, two different statutory provisions in Michigan law grant immunity to those who report suspected insurance fraud to insurance companies in good faith and without malice. To encourage reporting, Michigan has a heightened standard to show malice. The Health Law Partners' actions fell squarely within the protected

12

conduct. It wrote a letter to various insurers based on it and its clients' opinions that Bond Pharmacy was billing for home infusion therapy that likely didn't occur or comport with billing requirements. It qualified its complaint by admitting that it didn't have full information. And it later learned that the FBI also had Bond Pharmacy on its radar for fraudulent billing practices. Accordingly, The Health Law Partners is immune from suit.

Second, The Health Law Partners' conduct of reporting suspected insurance fraud doesn't satisfy the type of extreme conduct required to validly plead either type of tortious interference under Michigan law. And Bond Pharmacy didn't plead as required because they couldn't. This Court should dismiss the complaint.

## Background

### A. Bond Pharmacy's alleged billing practices.

Bond Pharmacy is a compounding pharmacy in Mississippi. It makes pain medication that is injected into a patient's spinal fluid through pumps implanted under the skin. **Exhibit A**, Subpoena documents.

Medicare and most insurers will only pay for the type of spinal infusion treatment that Bond Pharmacy makes if it occurs in a patient's home or at an ambulatory infusion suite. *Id.* An ambulatory infusion suite is a specialized office where skilled nurses and clinical pharmacists administer medicine into the spine.

13

Medicare and most insurers won't pay for the treatment if it's administered in a doctor's office. *Id.*

To capture in-office business that's otherwise not covered, Bond Pharmacy allegedly devised several complicated payment schemes. *Id.* In one suspected scheme, Bond Pharmacy apparently gave the medicine to doctors for free to administer in office. Bond Pharmacy then apparently advised the doctors not to bill insurance for it. Bond Pharmacy then billed the insurer directly for home infusion therapy under "S" code services. *Id.* In another suspected scheme, Bond Pharmacy apparently advised patients to get the treatment at their doctor's office but claim that it was out-of-network treatment. The patients would then receive a large refund from the insurer and then remit payment back to the physician and Bond Pharmacy. *Id.*

**B. The Health Law Partners gets notified of Bond Pharmacy's questionable billing practices.**

The Health Law Partners, P.C. is a law firm based in Michigan, with additional offices in New York.  The Health Law Partners' practice is dedicated to health law, including health law compliance and regulatory matters.

The Health Law Partners represents several clients in the pharmacy industry, as well as physician practices that administer spinal infusion pain medication in-office for patients with implanted pain pumps. Those clients informed The Health

Law Partners of potential improper billing practices by Bond Pharmacy. *Id.* They also informed The Health Law Partners that Bond Pharmacy may not be in conformity to various insurer provider agreements, as well as Medicare and other payor requirements, and they sought advice regarding the matter. *Id.*

Upon receipt of this information, The Health Law Partners reviewed the information, formed opinions based on its professional experience in the industry, rendered advice to its clients, and ultimately raised the concerns with various insurers, including to Jamie Burnett of Anthem VA.

In the email to Anthem VA, The Health Law Partners did not state that Bond Pharmacy had actually committed or engaged in any inappropriate practices. *Id.* The email does not speak in concrete, factual terms. Rather, the email simply relayed the concerns of the alleged suspicions. In fact, the email itself explicitly states that neither The Health Law Partners nor its clients have been privy to all information about Bond Pharmacy and its billing practices with Anthem VA or any other provider, and that the email contained opinions which required additional facts and information to determine their authenticity. *Id.* The following language excerpts are taken directly from the emails from The Health Law Partners to Anthem VA:

- "[I]n our opinion, [the evidence] reasonably indicates that AIS may not be in compliance with BCBS coverage standards and its Provider Agreement."

15

- "To be clear, neither our HLP clients nor our firm are privy to all information regarding AIS and cannot make this determination ourselves."

- "HLP clients have become aware of certain information (including certain EOBs) which suggests that AIS may be operating in a manner that does not comply with the above policy/requirements."

- "Again, however, we do not have full information on AIS's practices and merely offer the opinion of our firm and the HLP clients based on the information that we have seen and heard."

On August 31, 2020, Health Law Partners received an email back from Anthem VA, which acknowledged receipt. **Exhibit A**, Subpoena documents. On May 13, 2021, The Health Law Partners sent Anthem VA a follow-up email with a single attachment. *Id.*

After The Health Law Partners voiced its concerns, it learned that Blue Cross Blue Shield of Michigan had been investigating Bond Pharmacy's use of "S" codes for home infusion therapy for over a year before The Health Law Partners contacted any insurer. The Health Law Partners learned of this via Blue Cross Blue Shield of Michigan suing Bond Pharmacy in the Eastern District of Michigan. **Exhibit A**, Subpoena documents. Blue Cross Blue Shield of Michigan alleged that Bond Pharmacy fraudulently obtained $6,406,792 by submitting claims under code S9328 for home infusion therapy. *Id.*

16

Bond Pharmacy is also involved in the following known Federal lawsuits over its billing practices, all of which are materially similar in nature:

- *Bond Pharmacy, Inc., v. Blue Cross Blue Shield of Wyoming*, 2:23-cv-00053 (2023).

- *Bond Pharmacy, Inc., d/b/a AIS Healthcare v Anthem Health Plans of Virginia d/b/a Anthem Blue Cross Blue Shield* 1:22-cv-01343 (2022).

- *Bond Pharmacy, Inc., d/b/a AIS Healthcare v Blue Shield of California Life and Health Insurance Company, et al* 2:23-cv-01497 (2023).

- *Bond Pharmacy, Inc., d/b/a AIS Healthcare v Blue Cross & Blue Shield of Mississippi, et al* 3:21-cv-00123 (2021; closed 2022).

In addition to these 5 Federal litigation matters, Bond Pharmacy is also conducting at *least* 13 arbitrations, each of which involves "the same parties (AIS as plaintiff/claimant, and the appropriate Anthem entity as defendant/respondent), the same set of facts, the same witnesses, the same operative contract, and the same amendments thereto." *Bond Pharmacy, Inc., d/b/a AIS Healthcare v Anthem Health Plans of Virginia d/b/a Anthem Blue Cross Blue Shield* 1:22-cv-01343 (2022)[1], ECF No. 200,

---

[1] This matter filed in the Eastern District of Virginia shall hereinafter be referred to as the "EDVA Action."

17

PageID.7788. And, the FBI also has executed two search warrants on Bond Pharmacy's Ridgeland and Newton County offices related to billing practices.[2]

**C. Bond Pharmacy discovered the emails.**

The basis of the EDVA Action is a contractual dispute between Bond Pharmacy and Anthem VA, specifically concerning Bond Pharmacy providing compounded drugs and home infusion therapy services to Anthem's members under Anthem's VA's provider agreement. Bond Pharmacy filed the EDVA Action on November 23, 2022, suing Anthem VA with counts of: (i) Breach of Contract; (ii) Anticipatory Breach of Contract; (iii) Unjust Enrichment; and (iv) Declaratory Judgment Pursuant To 28 U.S.C. § 2201. On or about April 26, 2023, Anthem counterclaimed against Bond Pharmacy alleging one count for Breach of Contract.

Purportedly just before discovery closed in the EDVA Action, Bond Pharmacy learned of and obtained the emails from Health Law Partners to Anthem VA. Instead of seeking further discovery from Anthem VA or Jamie Burnett (the recipient of the emails and call, and an employee of an actual party to the action), Bond Pharmacy issued a non-party subpoena to The Health Law Partners, requesting a 30(b)(6)

---

[2] Ross Adams, *FBI descends upon Ridgeland office building,* WAPT (Mar. 2, 2023, 7:27 AM), https://www.wapt.com/article/fbi-descends-upon-ridgeland-office-building/43145461. WTOK Staff, WTOK (March 1, 2023, 3:30 PM), https://www.wlbt.com/2023/03/01/fbi-presence-newton-county/. Under Fed. R. Evid. 201(b) and (d), the Court may take judicial notice of this fact because the raid is not subject to reasonable dispute and can be determined from sources whose accuracy cannot reasonably be questioned.

deposition and certain non-privileged documents. Opinion and Order, RE 11-2, Page ID # 61-63. During the deposition, however, it became clear that Bond Pharmacy simply wanted to learn the identity of The Health Law Partners' clients who had reported them. Opinion and Order, RE 11-2, Page ID # 63. The Health Law Partners' refused to disclose that information. *Id.* So Bond Pharmacy filed a motion to compel. Opinion and Order, RE 11-2, Page ID # 63, 65.

This Court held a lengthy hearing and issued an opinion denying Bond Pharmacy's request. Opinion and Order, RE 11-2, Page ID # 65-66. During this hearing, counsel for The Health Law Partners explicitly warned the Court about its concerns regarding the improper purpose of Bond Pharmacy's decision to subpoena nonparty The Health Law Partners, rather than seeking information from Anthem VA and/or Jamie Burnett:

> This is a dispute between Anthem and AIS, not any other third party. And again, it's a concern. I believe it's a rational concern that this proceeding could be used as a stalking horse or what could become a claim for defamation or tortious interference against HLP.[3]

The Court held that the identities of The Health Law Partners' clients was irrelevant to the EDVA Action. *Id.*

---

[3] Case 2:23-mc-51368-LVP-DRG, ECF No. 31, PageID.2458.

19

### D. Bond Pharmacy sued Health Law Partners.

Bond Pharmacy then sued The Health Law Partners, ultimately substantiating The Health Law Partners' concerns it had expressed to the Court just months before. RE 1, Page ID # 1-22. The complaint alleges that The Health Law Partners made false statements about Bond Pharmacy's billing under code S9328 for home infusion therapy. Complaint, RE 1, Page ID # 13. It claims that The Health Law Partners' email caused Anthem Blue Cross Blue Shield and other payors to dispute and deny thousands of claims. Complaint, RE 1 Page ID # 15. It alleges one count of tortious interference with a contract and one count of tortious interference with a business relationship and expectancy. Complaint, RE 1, Page ID # 16-18.

### E. Anthem VA prevails on Summary Judgment Motion in EDVA Action

Then, on February 20, 2024, the court in the EDVA Action granted Anthem VA's motion for partial summary judgment. **Exhibit B**, MSJ Opinion and Order in *Bond Pharmacy, Inc., d/b/a AIS Healthcare v Anthem Health Plans of Virginia d/b/a Anthem Blue Cross Blue Shield* 1:22-cv-01343 (2022).

In its order, the court agreed with Anthem VA's argument that "if the drug therapy was refilled or administered in the Place of Service other than Home, no per diems are ever payable for any date associated with the drug therapy." *Id.* The court elaborated on its findings, determining that the language of the contract meant Bond Pharmacy "may not receive per diems for any date associated with the drug

20

therapy when the pump was refilled outside of the home, regardless of where any administration took place." *Id.* The court's findings in granting Anthem VA's motion for partial summary judgment mirror the suspicions and concerns put forth by The Health Law Partners in its emails to Anthem VA and other providers.

**Legal Standard**

A party may move for dismissal under Rule 12(b)(6) if the plaintiff fails to plead sufficient factual allegations to state a claim upon which relief can be granted. *L.C. v. United States*, 83 F.4th 534, 550 (6th Cir. 2023) (affirming dismissal of plaintiff's complaint for failing to plead sufficient factual allegations to state a claim upon which relief can be granted).

When ruling on a 12(b)(6) motion, courts must accept the factual allegations as true but should reject legal conclusions or unwarranted factual inferences. *Id.* (citations omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("[t]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* That standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

Additionally, "when a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett* v. *Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## Arguments

### I – Immunity

Under Michigan Law, The Health Law Partners is immune from suit. This Court should dismiss the complaint.

### A. Michigan Insurance Code provides qualified immunity for reporting insurance fraud.

Qualified immunity frees a defendant "from the concerns of litigation, including 'avoidance of disruptive discovery.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009). Michigan provides qualified immunity under its insurance code to a person who writes to an organization with information about suspected insurance fraud and does so without malice is immune from liability:

> A person acting without malice is not subject to liability
> for filing a report . . . or furnishing . . . in writing other

22

> information concerning suspected or completed insurance
> fraud, if the reports or information are provided to . . . any
> other organization, and their agents, employees, or
> designees, unless that person knows that the report or
> other information contains false information pertaining to
> any material fact or thing.

Mich. Comp. Laws § 500.4509(1).

The statute defines a person as, among other things, a corporation or any other legal entity. Mich. Comp. Law § 500.4501(f). It defines an organization as an organization or internal department of an insurer established to detect and prevent insurance fraud. Mich. Comp. Laws § 500.4501(e).

Because the Legislature designed the statute to foster communications for insurance-fraud prevention, Michigan uses a heightened standard to show malice. *Radu v Herndon & Herndon Investigations, Inc.*, 838 N.W.2d 720, 729 (Mich. Ct. App. 2013). That heightened standard requires a plaintiff to allege facts showing that the person furnished information "with knowledge of its falsity or with reckless disregard of its truth or falsity." *Id.*, adopting the rule from *Feyz v. Mercy Mem. Hosp.*, 719 N.W.2d 1, 14-15 (Mich. 2006). See also *Marks One Car Rental, Inc. v. Auto Club Group Ins. Co.*, 55 F. Supp. 3d 977, 983-84 (E.D. Mich. 2014) (recognizing that Michigan's Legislature designed the statute to foster the communicative and evaluative processes related to insurance-fraud prevention.).

23

Furthermore, ill will, spite or even hatred, standing alone, do not amount to actual malice. *Radu*, 838 N.W.2d at 729. "Reckless disregard" is not measured by whether a reasonably prudent man would have published or would have investigated before publishing, but by whether the publisher in fact entertained serious doubts concerning the truth of the statements published. *Id.* at 730. Nor is reckless disregard established merely by showing that the statements were made with preconceived objectives or insufficient investigation. *Id.*

B. **Michigan Health Care False Claim Act provides civil immunity for reporting suspected insurance fraud.**

Under the Michigan Health Care False Claim Act, immunity is granted to persons who, in good faith, provide information or cooperates with an investigation related to potentially false or fraudulent claims. Mich. Comp. Laws § 752.1008a. The purpose of the Michigan Health Care False Claim Act is to prohibit fraud in the obtaining of benefits or payments in connection with health care coverage and insurance. Mich. Comp. Laws Ann. § Ch. 752, Refs & Annos.

The Health Care False Claim Act defines "person" as "an individual, corporation, partnership, association, or any other legal entity." Mich. Comp. Laws § 752.1002(i). As such, Health Law Partners is considered a person under the MI False Claims Act. The MI False Claims Act does not define investigation.

24

### C.  The Health Law Partners is entitled to immunity.

The plain language of Mich. Comp. Laws §§ 500.4509 and 752.1008a shields The Health Law Partners from civil liability. The Health Law Partners is considered a person as defined under Michigan's Insurance Code and the Michigan False Claim Act, and the insurers referenced in the Complaint are considered organizations. Mich. Comp. Law § 500.4501(e)-(f); Mich. Comp. Law § 752.1002(i). Moreover, The Health Law Partners acted in good faith and reported its concerns about Bond Pharmacy's billing practices with care—ensuring to qualify its allegations with its lack of complete knowledge:

- "HLP clients have become aware of certain information (including certain EOBs) which suggests that AIS may be operating in a manner that does not comply with the above policy/requirements."

- "[I]n our opinion, [the evidence] reasonably indicates that AIS may not be in compliance with BCBS coverage standards and its Provider Agreement."

- "To be clear, neither our HLP clients nor our firm are privy to all information regarding AIS and cannot make this determination ourselves."

- "[W]e lack the investigative methods that are available to large insurers, like you..."

- "Again, however, we do not have full information on AIS's practices and merely offer the opinion of our firm and the HLP clients based on the information that we have seen and heard."

25

**Exhibit A**, Subpoena documents.

The emails show that The Health Law Partners took care to explain that it based its *opinion* solely on information that it had from clients, that it did not have all facts to make a judgment, and advised the insurers to conduct their own internal reviews of Bond Pharmacy's billing practices and draw their own conclusions.

In its complaint, Bond Pharmacy attempts to characterize The Health Law Partners' correspondence with Anthem VA as malicious by simply labelling it as "malicious." Notably, Bond Pharmacy does not quote or directly reference any of the language contained in the emails. In fact, Bond Pharmacy *did not even attach the emails to its complaint*. This decision was no oversight or clerical error, but rather a clear attempt to create a factual dispute out of thin air in efforts to survive this anticipated Motion to Dismiss. Bond Pharmacy's obvious attempt to circumvent the pleading requirements fails.

Courts must reject legal conclusions or unwarranted factual inferences when ruling on a 12(b)(6) motion. *L.C.*, 83 F.4th at 550; *Iqbal*, 556 U.S. at 686 ("[t]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").

The actual language of the emails does not support any of the conclusory allegations raised by Bond Pharmacy, and Bond Pharmacy has not plead any specific facts to support its conclusions. Nothing in the emails or Bond's Complaint

26

plausibly shows that The Health Law Partners furnished information with malice—much less that The Health Law Partners provided the information with knowledge of its falsity or with reckless disregard for its truth or otherwise meet the standard for malice under *Radu*. Indeed, Bond Pharmacy's "naked assertions" of falsity have now been contradicted by the Court in the EDVA. Exhibit 2, Opinion and Order in *Bond Pharmacy, Inc., d/b/a AIS Healthcare v Anthem Health Plans of Virginia d/b/a Anthem Blue Cross Blue Shield* 1:22-cv-01343 (2022).

As such, The Health Law Partners is entitled to the civil immunity offered under Mich. Comp. Laws §§ 500.4509 and 752.1008a, and is entitled to it at the Motion to Dismiss phase. Fed. R. Civ. P. 12(b)(6); *L.C.*, 83 F.4th at 550; *Iqbal*, 556 U.S. at 686. The Court should dismiss Bond Pharmacy's complaint.

## II. – Tortious interference with a contract

Bond Pharmacy thinks reporting a legitimate concern about insurance fraud amounts to tortious interference with a contract. It's wrong. And it fails to state a valid claim.

### A. Tortious interference with a contract requires a per se wrongful act or an act done with malice and without legal justification.

In Michigan, tortious interference with a contract is a different cause of action than tortious interference with a business expectancy. *Knight Enterprises v RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013).

27

To state a valid claim for tortious interference with a contract requires *pleading* facts showing: (1) the existence of a contract; (2) a breach of the contract; and (3) an unjustified instigation of the breach by the defendant. *Id.* at 348. Element 3 requires alleging either the intentional doing of a *per se* wrongful act—*i.e.*, one that is never justified under any circumstance—or doing a lawful act with malice and without legal justification for the purpose of invading someone's contractual rights. *Id.*, citing *Derderian v Genesys Health Care Sys.*, 689 N.W.2d 145 (Mich. Ct. App. 2004); *Badiee v Brighton Area Schools*, 695 N.W.2d 521, 539 (Mich. Ct. App. 2005) (racial slurs and ethnic intimidation was insufficient to state a claim for intentional interference of a contract); *CMI Intern., Inc. v. Intermet Intern Corp.*, 649 N.W.2d 808, 812 (Mich. Ct. App. 2002) (employee's actions of going to work for competitor who had a non-solicitation agreement with Plaintiff was insufficient to state a claim for tortious interference with a contract).

When a defendant's acts are "motivated by legitimate business reasons," it does not act with malice and a lack of justification. *BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*, 552 N.W.2d 919, 925 (Mich. Ct. App. 1996).

Moreover, plaintiffs who want to withstand dismissal at the 12(b)(6) stage, must provide factual allegations corroborating a defendant's malicious intent. *Mourad v. Marathon Petroleum Co. LP*, 129 F. Supp. 3d 517, 523 (E.D. Mich. 2015), aff'd, 654 F. App'x 792 (6th Cir. 2016). It is not enough to broadly allege that a defendant

28

acted improperly or took "several actions indicative of malice." *Elias v. Fed. Home Loan Mortg. Corp.*, 581 F. App'x 461, 464 (6th Cir. 2014) (finding such allegations to be no more than legal conclusions that need not be accepted as true). Dismissal at this stage is permitted when a plaintiff simply parrots the required state of mind by a defendant without any factual support. *Mourad*, 129 F. Supp. 3d at 523 (2015).

**B. Plaintiff fails to state a claim for tortious interference with a contract.**

Bond Pharmacy fails to state a claim for tortious interference with a contract because it doesn't plead either a *per se* wrongful act or a lawful act done with malice and without legal justification.

Reporting a legitimate concern about insurance fraud is lawful, justified, and encouraged. *Knight Enterprises*, 829 N.W.2d at 348; Mich. Comp. Laws § 500.4509; Mich. Comp. Laws § 752.1008a. Moreover, The Health Law Partners took care to explain that it didn't have full information and was only writing based on what is had seen and observed. And even though reporting insurance fraud is justified in itself, the emails also explained that Bond Pharmacy's improper billing practices could cause physicians to become wrongfully ensnared and targeted. So The Health Law Partners not only acted lawfully, it also had ample justification to express its concerns. Because no facts exist or are plead to show a *per se* wrongful act or one done with malice and without legal justification, dismissal is appropriate.

Bond Pharmacy's attempt to label the August 2020 email as malicious fails to save its claim. Bond Pharmacy's "naked assertions" that lack specific factual references and generally pleaded claims are precisely the type of "threadbare conclusory statements" that do not reach the required threshold to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678; *Mourad*, 129 F. Supp. 3d at 523. Indeed, Bond Pharmacy's "naked assertions" have now been contradicted by the Court in the EDVA. Exhibit 2, Opinion and Order in *Bond Pharmacy, Inc., d/b/a AIS Healthcare v Anthem Health Plans of Virginia d/b/a Anthem Blue Cross Blue Shield* 1:22-cv-01343 (2022).

The conduct here simply doesn't rise to the level needed to state a claim. Bond Pharmacy has failed to plead the requisite facts showing the third element for a *per se* wrongful act or one that was done with malice and without legal justification. *Knight Enterprises*, 829 N.W.2d at 348; *Badiee*, 695 N.W.2d at 539. As such, this Court should dismiss Count I.

### III. – Tortious interference with a business expectancy

To plead a valid claim for tortious interference with a business expectancy or relationship requires showing an illegal, fraudulent, or unethical act. Reporting suspected insurance fraud is none of those things. So, again, Bond Pharmacy fails to state a claim.

30

### A. Tortious interference with a business expectancy requires an illegal, fraudulent, or unethical act.

To allege a valid claim for tortious interference with a business relationship or expectancy the plaintiff must show (1) the existence of a valid business relationship or expectancy; (2) the defendant's knowledge of the relationship or expectancy; (3) an intentional interference by the defendant causing a breach or termination of the relationship or expectancy; and (4) damages. *Cedroni Ass'n, Inc. v. Tomblinson, Harburn Assoc., Architects, & Planners*, 821 N.W.2d 1, 3 (Mich. 2012).

To fulfill the third element, a plaintiff must demonstrate at the pleading stage that the defendant acted **both** **intentionally** and **either** **improperly or without justification.** *Dalley v. Dykema Gossett*, 788 N.W.2d 679, 696 (Mich. Ct. App. 2010). *Dalley* reiterated that the intentional act of filing a lawsuit doesn't satisfy the pleading standard. *Id.* (holding that there was nothing illegal, unethical, or fraudulent about filing a lawsuit, whether groundless or not). Rather, the plaintiff must show an illegal, unethical, or fraudulent act. *Id.*; *Advoc. Org. for Patients and Providers v. Auto Club Ins Ass'n.*, 670 N.W.2d 569, 579-580 (Mich. Ct. App. 2003).

To establish that a defendant's conduct lacked justification and showed malice, "the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." *Id.* citing *BPS Clinical Laboratories*, 552 N.W.2d at 925.

31

Michigan appellate courts describe this intent as an "essential element of a claim of tortious interference"—often characterizing a defendant's intentional conduct as having "unjustifiably instigated or induced" a breach of contract. *Derosia v. Austin*, 321 N.W.2d 760, 762 (Mich. Ct. App. 1982). But no matter how Michigan courts describe this intent, "[t]he essential thing is the purpose to cause the result. If the actor does not have this purpose, his conduct does not subject him to liability ... even if it has the unintended effect of deterring the third person from dealing with the other." *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018).

Together with motive, the Michigan Court of Appeals has held that consideration of the factors below are relevant in determining whether a defendant acted with malice: (1) the nature of the defendant's conduct, (2) the nature of the plaintiff's contractual interest, (3) the social utility of the respective interests of the plaintiff and the defendant, and (4) the proximity of the defendant's conduct with the interference. *Jim-Bob, Inc. v. Mehling*, 443 N.W.2d 451, 462-463 (Mich. Ct. App. 1989).

Defamatory statements may also form the basis of a tortious interference claim in Michigan. *Lakeshore Cmty Hosp. v. Perry*, 538 N.W.2d 24 (Mich. Ct. App. 1995). But again, defamation requires showing a false statement concerning the plaintiff. *Rouch v. Enquirer & News of Battle Creek Michigan*, 487 N.W.2d 205 (Mich.

1992). Mere statements of opinion are not defamatory." *Ireland v. Edwards*, 585 N.W.2d 632, 637 (Mich. Ct. App. 2009).

To survive a motion to dismiss, plaintiffs claiming defamation must identify the exact language they claim to be false. *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 495 N.W.2d 392, 394 (Mich. Ct. App. 1992). A plaintiff's subjective belief that a defendant's alleged statements are defamatory "does not designate specific facts showing that there is a genuine issue for trial." *Ledl v. Quik Pik Food Stores, Inc.*, 349 N.W.2d 529, 532 (1984) (holding that plaintiff who failed to state the defamatory statements with specificity failed to state a claim). Rather, these elements must be specifically pleaded and proven at the pleading stage, including specific proof of the defamatory words, the connection between the plaintiff and the defamatory words, and publication. *Cole v. Knoll, Inc.*, 984 F. Supp. 1117, 1134 (W.D. Mich. 1997).

## B. Bond Pharmacy fails to state a claim for tortious interference with a business relationship.

Here, The Health Law Partners reported to various insurers its valid concern about Bond Pharmacy's improper billing practices. Those insurers sued Bond Pharmacy. There is nothing illegal, fraudulent, or unethical about reporting a legitimate concern about insurance fraud; Michigan encourages it and protects against retaliatory suits like this. Mich. Comp. Laws § 500.4509; Mich. Comp. Laws § 752.1008a; *see also Advoc. Org. for Patients and Providers*, 670 N.W.2d at 579-580. And

The Health Law Partners' email made plain that it was merely expressing its opinion. *Ireland*, 585 N.W.2d at 637. So Bond Pharmacy fails to plead or state a claim.

Bond Pharmacy alleges that The Health Law Partners statements were "false and defamatory," yet it fails to identify <u>any</u> specific language which supports this conclusion. And Bond Pharmacy's mere subjective belief that The Health Law Partners' statements were defamatory does not designate specific facts showing that there is a "genuine issue for trial." *Ledl*, 349 N.W.2d at 532. Rather, Michigan law requires the court to decide as a matter of law whether a particular statement is defamatory. *Fisher v. Detroit Free Press, Inc.*, 404 N.W.2d 765, 767 (Mich. Ct. App. 1987).

Indeed, Bond Pharmacy's subjective beliefs (with no pleading of specific facts to support) have now been contradicted by the Court in the EDVA Action. Exhibit 2, Opinion and Order in *Bond Pharmacy, Inc., d/b/a AIS Healthcare v Anthem Health Plans of Virginia d/b/a Anthem Blue Cross Blue Shield* 1:22-cv-01343 (2022).

Bond Pharmacy has alleged that the purpose of The Health Law Partners emails was to harm Bond Pharmacy and its market position. ECF No. 1, PageID.1- at 52. However, Bond Pharmacy concedes and acknowledges in the Complaint that The Health Law Partners had a valid business purpose for sending the letters, stating that The Health Law Partners purpose was to "ensure that all affected providers in the industry were 'treated equally,' and that Bond Pharmacy enjoyed no

'unfair advantage' in competing for physician practice in-office pain clinic pharmacy business." ECF No. 1, PageID.10 at 53.

The emails also expressed concern that Bond Pharmacy's potentially improper billing practices could cause physicians to become wrongfully ensnared and targeted. And, as noted above, Michigan's legislature has specifically sought to immunize parties like The Health Law Partners from civil liability with qualified immunity statutes, all in order to encourage reporting concerns to insurers. Mich. Comp. Laws § 500.4509 and § 752.1008a. The Health Law Partners was legally justified in its actions, as the reporting of suspected insurance fraud is precisely the type of actions that *Jim-Bob, Inc.* intended to protect in regards to the social utility of the parties' actions. *Jim-Bob, Inc.*, 443 N.W.2d at 462-463. Thus, dismissal is appropriate.

Finally, Bond Pharmacy's complaint fails as a matter of law because it failed to plead specific facts showing that The Health Law Partners' emails and correspondence with Anthem VA were defamatory. Bond Pharmacy's decision to not cite any specific language in The Health Law Partners' emails is fatal under Michigan law, as it failed to designate any specific facts showing that there is a genuine issue for trial. *Ledl*, 349 N.W.2d at 532. Under *Fisher*, this Court is entitled to review the emails – which form the backbone and basis for the entirety of Bond

Pharmacy's Complaint – and determine as a matter of law that the statements are not defamatory in any way, and dismiss Bond Pharmacy's Complaint in its entirety.

### Conclusion and Requested Relief

Bond Pharmacy filed its complaint as retaliation against The Health Law Partners, P.C., for reporting Bond Pharmacy's suspected insurance fraud. Michigan[4] immunizes The Health Law Partners from suit.

Moreover, Bond Pharmacy's pleadings related to The Health Law Partners' conduct of reporting the alleged insurance fraud do not rise to the level needed to state a valid claim for either interference with a contract or interference with a business relationship or expectancy. Likewise, Bond Pharmacy has failed to properly plead that the statements made by The Health Law Partners in its emails constitute defamation. The Court should dismiss Bond Pharmacy's complaint with prejudice in its entirety.

Respectfully submitted,

COLLINS EINHORN FARRELL PC

*/s/ David C. Anderson*
DAVID C. ANDERSON (P55258)

---

[4] Bond Pharmacy asserts that Michigan law should govern this action. For the purposes of this Motion to Dismiss, given that Michigan has clearly immunized The Health Law Partners' conduct, we have only addressed Michigan law. Note, however, that the various states with Anthem/Blue Cross entities that Bond Pharmacy identifies in its Complaint also themselves have civil immunity statutes, shorter statutes of limitations periods, and ANTI-SLAPP statutes that would separately form basis for dismissal. We respectfully request the right to address these separate bases for dismissal in the event necessary.

JEFFREY R. HICKS (P74279)
*Attorneys for The Health Law Partners, P.C.*
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141

NICHOLS LIU LLP

*/s/ Robert Rhoad*
ROBERT T. RHOAD
*Co-Counsel for The Health Law Partners, P.C.*
655 15th St NW #425
Washington, DC 20005
(202) 846-9807
rrhoad@nicholsliu.com

Dated: February 27, 2024

**CERTIFICATE OF SERVICE**

I, David C. Anderson, certify that on February 27, 2024, I electronically

filed the foregoing paper with the Clerk of the Court using the ECF system,

which will send notification of such filing to *all ECF participants*.

/s/ *David C. Anderson*
COLLINS EINHORN FARRELL PC
DAVID C. ANDERSON (P55258)
David.anderson@ceflawyers.com

Dated: February 27, 2024

**CERTIFICATE OF COMPLIANCE**

I, David C. Anderson, certify that this document complies with Local

Rule 5.1(a), including: double-spaced (except for quoted materials and

footnotes); at least one-inch margins on the top, sides, and bottom;

consecutive page numbering; and type size of all text and footnotes that is

no smaller than 101/2 characters per inch (for non-proportional fonts) or 14

point (for proportional fonts). I also certify that it is the appropriate length.

Local Rule 7.1(d)(3).

/s/ *David C. Anderson*
COLLINS EINHORN FARRELL PC
DAVID C. ANDERSON (P55258)
Dated: February 27, 2024      David.anderson@ceflawyers.com