## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| BOND PHARMACY INC., d/b/a AIS HEALTHCARE, | ) ) ) ) Case No. 2:23-CV-13069-BAF-APP |
| Plaintiff, | ) |
| v. | ) Hon. Linda V. Parker |
|  | ) Hon. Mag. David R. Grand |
| THE HEALTH LAW PARTNERS, P.C., | ) ) |
|  | ) |
| Defendant. | ) |
|  | ) |
|  | ) |

## PLAINTIFF'S RESPONSE IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES PRESENTED.................................................................iv

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

STANDARD............................................................................................................8

ARGUMENT ..........................................................................................................9

     I.     HLP Is Not Entitled To Statutory Immunity.......................................9

           A.     The HCFCA Does Not Apply Because It Only Limits
                 Civil Liability In Connection With State Government
                 Investigations. ...........................................................................10

           B.     HLP Also Cannot Invoke Civil Immunity Under The
                 MIC. ...........................................................................................11

     II.     AIS Has Sufficiently Alleged Its Tortious Interference Claims. ........15

CONCLUSION ......................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Amphion, Inc. v. Buckeye Elec. Co.*,
    285 F. Supp. 2d 943 (E.D. Mich. 2003) ...........................................................18

*Ashh, Inc. v. All About It, LLC*,
    475 F. Supp. 3d 676 (E.D. Mich. 2020) ....................................................8, 9, 12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................8

*Bond Pharmacy, Inc., d/b/a AIS Healthcare v. Anthem Health Plans of
Virginia d/b/a Anthem Blue Cross Blue Shield*,
    1:22cv1343, ECF NO. 1-2 (E.D. Va. 2023) .............................3, 7, 8, 12, 13, 19

*Elias v. Fed. Home Loan Mortg. Corp.*,
    581 F. App'x 461 (6th Cir. 2014).....................................................................17

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*,
    268 Mich. App. 83 (2005) .................................................................................15

*Knight Enter. v. RPF Oil Co.*,
    299 Mich. App. 275 (2013) ...............................................................................17

*LULAC v. Bredesen*,
    500 F.3d 523 (6th Cir. 2007) ..............................................................................8

*Marks One Car Rental, Inc. v. Auto Club Grp. Ins. Co.*,
    55 F. Supp. 3d 977 (E.D. Mich. 2014) ......................................13, 14, 16, 18, 19

*Mourad v. Marathon Petroleum Co. LP*,
    129 F. Supp. 3d 517 (E.D. Mich. 2015) ...........................................................18

*Radu v. Herdon & Herndon Investigations, Inc.*,
    302 Mich. App. 363 (2013) .........................................................................13, 14

*Sims v. Piper*,
    No. 07-14380, 2008 WL 3318746 (E.D. Mich. Aug. 8, 2008) ...................15, 19

*Spurlock v. Thompson*,
330 F.3d 791 (6th Cir. 2003) ..................................................................9

*Town of Smyrna v. Mun. Gas Auth. of Ga.*,
723 F.3d 640 (6th Cir. 2013) .............................................................9, 12

*Turner v. Corr. Med. Servs., Inc.*,
No. 13-11783, 2014 WL 864579 (E.D. Mich. Mar. 5, 2014)..............................9

<u>Statutes</u>

Mich. Comp. Laws Ann. § 500.4503.......................................................12

Mich. Comp. Laws Ann. § 500.4509...................................11, 12, 14, 15

Mich. Comp. Laws Ann. § 752.1008................................................10, 11

Mich. Comp. Laws Ann. § 752.1008a.....................................................10

<u>Other Authorities</u>

Fed. R. Civ. P. 8 ....................................................................................13

Fed. R. Civ. P. 12 ...................................................................................8

## **STATEMENT OF ISSUES PRESENTED**

1.     Can a Defendant invoke Mich. Comp. Laws § 752.1008a to avoid civil liability for intentionally and maliciously reporting false statements that a provider breached its agreement with and submitted false medical claims to an insurance company to improperly further its own business interests and those of third-parties when it did not make such report in connection with an investigation by the state attorney general or prosecuting attorney?

**PLAINTIFF'S ANSWER: No.**

2.     Can a Defendant invoke Mich. Comp. Laws § 500.4509(1) to avoid civil liability for intentionally and maliciously reporting false statements that a provider breached its agreement with and submitted false medical claims to an insurance company to improperly advance its own business interests and that of third-parties?

**PLAINTIFF'S ANSWER: No.**

3.     Can a Defendant prevail on a motion to dismiss Plaintiff's tortious interference claims when the Plaintiff has specifically alleged facts demonstrating Defendant intentionally and maliciously interfered with Plaintiff's contractual and business relationships without legal authority or justification to induce breaches by third-parties of obligations owed to Plaintiff?

**PLAINTIFF'S ANSWER: No.**

-iv-

# MOST APPROPRIATE AUTHORITIES

## Rules

Fed. R. Civ. P. 12(b)(6)

## Cases

*Marks One Car Rental, Inc. v. Auto Club Grp. Ins. Co.*, 55 F. Supp. 3d 977 (E.D. Mich. 2014)

*Amphion, Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d 943 (E.D. Mich. 2003)

## Statutes

Mich. Comp. Laws Ann. § 752.1008a

Mich. Comp. Laws Ann. § 500.4509(1)

## **INTRODUCTION**

Plaintiff Bond Pharmacy, Inc., d/b/a AIS Healthcare ("AIS"), is a Michigan-licensed provider of specialized home infusion therapy ("HIT") who cares for the most vulnerable and sickest patients in Michigan, and employs nurses there to care for them. Defendant The Health Law Partners, P.C ("HLP") – a law firm that operates out of New York and Michigan that represents clients, including possible competitors of AIS – seeks to dismiss AIS's Complaint by arguing it acted in good faith to report insurance fraud and is therefore immune from civil liability. To be clear, there is no fraud tied to AIS's billing practices, as payors and Courts have publicly found across the country. Nevertheless, HLP mistakenly relies on Michigan reporting statutes that only immunize those who cooperate with state investigations or report insurance fraud without malice. Because HLP has done neither, and AIS has specifically alleged that HLP acted with malice, it cannot invoke those statutes as dismissal grounds.

HLP is also mistaken that AIS has not sufficiently pled its tortious interference claims. AIS has more than alleged in its 120-paragraph Complaint that HLP intentionally and maliciously interfered with AIS's contractual and business relations and caused its counterparties to breach obligations owed to it. Its allegations are more than sufficient at this stage.

The Court should deny HLP's Motion.

## BACKGROUND

AIS is a Michigan-licensed pharmacy and healthcare provider that offers specialty home infusion therapy ("HIT") and related services.  Complaint, ECF No. 1 ("Cmplt.") ¶¶ 2 & 25.  AIS is the largest provider of intrathecal HIT services in the United States and licensed to operate in all 50 states.  *Id.* ¶ 33.

HIT is the creation, dispensing, and infusing of medication by parenteral means.  *Id.* ¶ 26.  AIS operates in a specialized area of HIT involving intrathecal pumps.  *Id.* ¶ 30.  Specifically, AIS develops and dispenses patient-specific compounded medications that are continuously infused via implanted intrathecal pumps.  *Id.*  These pumps are surgically placed under the patient's skin and filled with bespoke, patient-specific medications that can infuse daily for up to 180 days before needing to be refilled.  *Id.* ¶¶ 31–32 & 34.  With these therapies, AIS's patients – who are among the most vulnerable patients in the United States – can go on with their daily lives while receiving vital treatment at home or wherever they go.  *Id.* ¶ 3.  Additionally, AIS also provides all patients with access to a host of ongoing care and services, such as clinical services, coordination of patient care, nursing services, and billing support services that are available 24/7/365.  *Id.* ¶ 35.

For intrathecal HIT, and in line with industry standards and payor requirements, AIS bills under the per diem reimbursement model created by the National Home Infusion Association ("NHIA").  *Id.* ¶¶ 41 & 45.  Under this model,

AIS bills HCPCS Code S9328 daily.  *Id.*  Code S9328 covers "[h]ome infusion therapy, implanted pump pain management infusion; administrative services, professional pharmacy services, care coordination, and all necessary supplies and equipment (drug and nursing visits coded separately), per diem." *Id.* ¶ 43.[1]  Under Code S9328, AIS may bill each day a patient has access to its prescribed therapy – that is, AIS's medication that infuses continuously via a patient's intrathecal pump. *Id.*  The Code applies specifically to intrathecal HIT providers, like AIS.  *Id.* ¶ 44.

Intrathecal HIT is only prescribed for patients who have serious and abiding illnesses such as cancer, chronic pain, and multiple sclerosis.  *Id.* ¶¶ 2 & 29.  As such, the patient population for intrathecal HIT is small, and every patient relationship AIS develops is critical to its success and growth.  *Id.* ¶ 38.  Through its therapy and care services, AIS has developed goodwill and relationships with patients, treating physicians, and payors.  *Id.* ¶ 37.  Other payors have also recognized the propriety of AIS's per diem billing practices, including findings that there is no "fraud, waste, or abuse" tied to AIS's per diem claims and practices.  *See, e.g.*, *Bond Pharmacy, Inc., d/b/a AIS Healthcare v. Anthem Health Plans of Virginia d/b/a Anthem Blue Cross Blue Shield*, 1:22cv1343, ECF NO. 1-2 at 2 (E.D. Va.

---

[1] NHIA, *National Coding Standard for Home Infusion Claims under HIPAA* at 112, https://nhia.org/wp-content/uploads/2023/01/NHIA_Code_Std.pdf (last visited Apr. 2, 2024).

2023) ("EDVA Action").[2]   Courts have also confirmed that the per diem reimbursement model is a viable model and practice in the industry as well.  *See generally* ECF No. 16-3 (EDVA Memorandum Opinion).

In 2019, AIS entered provider agreements with Anthem to provide intrathecal HIT to its members.  *Id.* ¶ 40.  Under its provider agreements, Anthem agreed that AIS would bill its claims for providing intrathecal HIT under Code S9328 in line with the HIPAA and NHIA Standards.  *Id.* ¶ 45.

### HLP Knowingly And Maliciously Interferes With AIS's Relationships

Beginning in 2020, HLP began to disparage AIS by contacting Anthem – and other payors – to harm AIS and its contractual and business relationships and to gain an unfair competitive position for itself and its clients.  *Id.* ¶¶ 46, 47, 61 & 66–67.  HLP did this to gain the attention and possible business from large healthcare payers and better position AIS' competitors, with those same insurers.   In its communications, HLP claimed to contact Anthem on behalf of clients in the

---

[2]   The reimbursement policies for BlueCross BlueShield of Minnesota and Texas adopt the per diem reimbursement model that payors typically apply.  *See* BlueCross BlueShield Minnesota, *Reimbursement Policy: Home Infusion*, https:// www.bluecrossmn.com/sites/default/files/DAM/2021-07/General-Coding-031-Home-Infusion.pdf (last visited Apr. 2, 2024); BlueCross BlueShield of Texas, *Clinical Payment & Coding Policy*, https://www.bcbstx.com/docs/provider/tx/ standards/clinical-pay-coding/cpcp019-home-infusion-12202021.pdf (last visited Apr. 2, 2024).

pharmacy industry and physician practices.   *Id.* ¶¶ 47 & 49.   HLP explained it supposedly wanted to ensure that all affected providers in the industry were "treated equally," and that AIS enjoyed no "unfair advantage" in competing for pharmacy business from physicians with in-office pain clinics.  *Id.* ¶ 53.

HLP first contacted Anthem in 2020.  *Id.* ¶¶ 47–48.  At the time, HLP had full knowledge of AIS's business and contractual relationship with Anthem.  *Id.* ¶ 51. HLP even quoted and used screenshots of AIS's provider agreement in its communications with Anthem.  *Id.* ¶ 56.  HLP told Anthem that AIS breached its agreement and violated Anthem's provider manuals by billing on a per diem basis, even though numerous payors (including Anthem) recognized and contracted for the per diem reimbursement model.[3]   *Id.* ¶¶ 54–55.   HLP further accused AIS of committing billing fraud, providing improper inducements to physicians and patients, submitting improper claims, and violating state and federal regulations without any basis – and even despite public findings by payors and others as to the validity and propriety of its billing practices.  *Id.* ¶ 55.  HLP even proposed that Anthem draft unilateral amendments to include exclusions and eliminate payments to AIS.  *Id.* ¶¶ 56–57.

---

[3]  *See, e.g.*, BlueCross BlueShield of Illinois, https://www.bcbsil.com/docs/provider/ il/standards/cpcp/cpcp019-12222022.pdf (last visited Apr. 2, 2024).

HLP knew that these statements were false when it made them and acted intentionally and maliciously to harm AIS, AIS's contractual relationship with Anthem, and AIS's reputation to the benefit of itself and its clients. *Id.* ¶¶ 58–59. Anthem circulated HLP's false statements among key decisionmakers at Anthem, including its HIT contracting department, thus harming AIS's reputation, standing, and goodwill. *Id.* ¶ 60.

On or around December 4, 2020, HLP contacted a different Anthem entity, Empire Blue Cross Blue Shield ("Empire"). *Id.* ¶ 61. HLP made the same false representations about AIS on behalf of the same "HLP Clients." *Id.* Just as with Anthem's Indiana entity, HLP knew of the agreement between Empire and AIS at the time it disseminated false statements about AIS. *Id.* ¶ 64. Again, HLP's allegations were circulated and published throughout Anthem's departments. *Id.* ¶ 62. As a result, on January 4, 2021, Anthem sent its national investigation team an audit referral to investigate AIS in response to HLP's outreaches. *Id.* ¶ 65.

HLP later contacted Anthem Indiana again on May 13, 2021, accusing AIS of "misusing" and fraudulently billing Code S9328. *Id.* ¶ 66. On June 4, 2021, HLP contacted Empire a second time to falsely allege that AIS fraudulently obtained funds from Blue Cross Blue Shield plans. *Id.* ¶ 67.

### *HLP Induces Anthem To Breach Its Agreements With AIS*

Following HLP's outreach and conduct, Anthem eventually disputed and denied thousands of AIS's Code S9328 claims based on the same unfounded accusations HLP made – namely, that AIS was not in compliance with Anthem's provider agreements and billed improperly. *Id.* ¶ 68. Anthem went on to deny AIS's claims and refused to pay for AIS's services despite having previously approved AIS's claims without any issue. *Id.* ¶ 69.

Anthem refused to pay AIS under the guise of a purported investigation of HLP's complaints. *Id.* Additionally, Anthem unilaterally amended its agreements with AIS multiple times to reduce the rates of reimbursement and prevent AIS from being paid for the services it provided and billed for under Code S9328. *Id.* ¶ 72. Anthem even sought to implement HLP's proposed exclusions to avoid paying AIS entirely under the parties' agreements. *Id.* ¶ 73.

### *AIS Sues Anthem And Uncovers HLP's Unlawful Conduct*

On November 23, 2022, AIS sued Anthem in the U.S. District Court for the Eastern District of Virginia, alleging Anthem wrongfully refused to pay AIS's provider claims. EDVA Action, ECF No. 1. During discovery in 2023, AIS first learned of HLP's unlawful conduct based on emails Anthem produced between its investigation team and HLP.

AIS and Anthem filed cross motions for summary judgment on December 1,

2023.   On February 20, 2024, the Court denied summary judgment on claims governed by the parties' original provider agreement.  EDVA Action, ECF No. 256 at 10–11 & 24.   The Court explained that there remained a genuine dispute of material fact regarding whether AIS's S9328 claims were payable.  *Id.* at 10–11.   However, the Court found that certain claims were excluded from payment under a later amendment unilaterally issued by Anthem.  *Id.* at 11–12.   That amendment resulted directly from HLP's outreaches.  *See* Cmplt. ¶¶ 72–73.

## **STANDARD**

HLP's motion is governed by familiar standards.  The Court must deny a motion to dismiss when a Complaint contains "sufficient factual allegations that make the asserted claim plausible on its face."  *Ashh, Inc. v. All About It, LLC*, 475 F. Supp. 3d 676, 678 (E.D. Mich. 2020); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007); Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when it contains "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashh, Inc.*, 475 F. Supp. 3d at 678, or, in other words, contains allegations "respecting all the material elements to sustain recovery under some viable legal theory," *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

When evaluating whether a claim is facially plausible, the Court "must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff."

*Ashh, Inc.*, 475 F. Supp. 3d at 678.  Moreover, the Court may consider only the "Complaint and any exhibits attached thereto," or risk "convert[ing] the motion into one for summary judgment."  *Id.*; *Turner v. Corr. Med. Servs., Inc.*, No. 13-11783, 2014 WL 864579, at *2 (E.D. Mich. Mar. 5, 2014).  And where, as here, a party invokes the defense of statutory or civil immunity to support a motion to dismiss, the moving party bears the burden of establishing that defense based on the pleadings.  *Cf. Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 650 (6th Cir. 2013) (explaining "the entity asserting the defense bears the burden of proof"); *Spurlock v. Thompson*, 330 F.3d 791, 796 (6th Cir. 2003) (explaining that the burden is on the party invoking the immunity).

Applying this standard, the Court should deny HLP's motion.

## ARGUMENT

### I.     HLP Is Not Entitled To Statutory Immunity.

HLP argues that it is entitled to immunity under Michigan law because it reported suspected insurance fraud to an insurance provider.  ECF No. 16 at 22–26.[4] But HLP just falsely reported AIS's alleged breach of its contracts with Anthem. And even when it falsely reported AIS's supposed fraud, it did so maliciously and without any proper basis to further its and its clients' interests by inducing Anthem

---

[4] Unless otherwise noted, all citations refer to the docket and page number assigned by the Court's electronic docketing system.

(and other payors) to breach its contracts with AIS.

### A.     The HCFCA Does Not Apply Because It Only Limits Civil Liability In Connection With State Government Investigations.

HLP invokes civil immunity under Section 752.1008a of the Michigan Health Care False Claim Act ("HCFCA").  ECF No. 16 at 23–26.  But that statute only protects persons from civil liability who are "providing information, investigating, or cooperating with an investigation or examination under [the HCFCA]." Mich. Comp. Laws Ann. § 752.1008a.  Moreover, Section 752.1008 limits investigatory power under the HCFCA to the "attorney general, an assistant attorney general on behalf of the attorney general, or a prosecuting attorney." *Id.* § 752.1008.  Thus, persons and organizations cannot invoke civil immunity under the HCFCA when they provide information to an insurance company that does not have statutory authority to conduct an investigation.  *See* Mich. Comp. Laws Ann. §§ 752.1008 & 752.1008a.

HLP is plainly not entitled to immunity under the HCFCA.  As AIS alleged, HLP maliciously provided false information to an insurance company related to AIS's compliance with the parties' agreement, not a state attorney general, an assistant attorney general, or a prosecuting attorney.  Cmplt. ¶¶ 46–74.  HLP provided information to Anthem so Anthem would conduct its own investigation and deny claims that, in HLP's view, were not payable under Anthem's contracts with AIS – not as part of a state or agency investigation.  ECF No. 16-2 at 2–3.

Accordingly, HLP cannot claim civil immunity under the HCFCA.  *See* Mich. Comp. Laws § 752.1008.

### B.    HLP Also Cannot Invoke Civil Immunity Under The MIC.

HLP's claim of civil immunity under the Michigan Insurance Code, Mich. Comp. Laws § 500.4509(1) ("MIC"), also fails for straightforward reasons.  ECF No. 16 at 21–26.  As an initial matter, HLP cannot invoke the MIC immunity where it falsely reported AIS's supposed breach of its agreement with Anthem.  That is because to establish immunity under the MIC, HLP must have provided "information concerning suspected or completed *insurance fraud*."  Mich. Comp. Laws § 500.4509(1) (emphasis added).  But there is nothing fraudulent about a healthcare provider submitting claims for payment based on services it provided under a contract that provides payment for such services, which is precisely what AIS did here.  Cmplt. ¶¶ 25–45.  The plain language of the MIC does not immunize HLP for providing information suggesting that AIS (ostensibly) breached its contracts with Anthem.  *See* Mich. Comp. Laws § 500.4509(1).

To avoid this conclusion, HLP points to the February 2024 Memorandum Opinion in the EDVA Action.  ECF No. 16 at 26.[5]  But that Opinion has no bearing on this litigation.  And it actually confirms that much of the information reported by

---

[5] Although HLP states that the EDVA "Opinion and Order" was from 2022, that is incorrect – it was issued on **February 20, 2024**.  *See* ECF No. 16 at 26 (citing EDVA "Opinion and Order"); ECF No. 16-3 at 25.

HLP related to AIS's compliance with its contract, not fraud.  EDVA Action, ECF No. 256 at 10–11.  Indeed, HLP informed Anthem of AIS's alleged breach of contract based on the terms of their original agreement, and long before Anthem unilaterally amended it in December 2021 based on HLP's guidance.  *See* ECF No. 16-2 at 2 (August 2020 email) & 9 (May 2021 email).  In other words, HLP called on Anthem to investigate AIS for contract issues.  Submitting claims for payment for services that were actually rendered under a contract that makes those claims payable is not an act of "insurance fraud" under the MIC, *see* Mich. Comp. Laws Ann. § 500.4503 (listing covered fraudulent acts), and, as such, HLP has failed to satisfy its burden of invoking immunity under the MIC, *see Town of Smyrna v*, 723 F.3d at 650 (explaining "the entity asserting the defense bears the burden of proof").[6]

Even if HLP met its burden, it cannot invoke immunity because it acted with malice.  *See* Mich. Comp. Laws Ann. § 500.4509(1) (limiting civil liability to those "acting without malice").  AIS specifically alleges that HLP acted with malice, Cmplt. ¶¶ 46–74 & 86–115, allegations the Court must accept as true, *see Ashh, Inc.*, 475 F. Supp. 3d at 678.  AIS has more than alleged facts showing that HLP has been "supplying information" to Anthem and others "with knowledge of its falsity or with

---

[6]  Anthem did not dispute that AIS actually provided the services covered by Code S9328; instead, it argued the claims were not payable under the parties' amended contract.  *See, e.g.*, *Bond Pharmacy, Inc., d/b/a AIS Healthcare*, ECF No. 256 at 6 (summarizing the parties' arguments).

-12-

reckless disregard of its truth or falsity." *Radu v. Herdon & Herndon Investigations, Inc.*, 302 Mich. App. 363, 378–79 (2013) (cleaned up).  AIS has specifically alleged that "HLP knowingly and willfully made false statements to payors" that AIS has:

- "Fraudulently billed claims using Code S9328";

- "Unlawfully induced physician practices and patients using unlawful payment models";

- "Violated its provider agreements";

- "Violated federal and state regulations";

- "Obtained an unlawful and unfair competitive advantage relative to other HIT Providers"; and

- "Falsely billed for HIT claims without providing services or care."

Cmplt. ¶ 90.[7]  And it made these false accusations and statements despite the public findings by payors and others on the propriety of AIS's practices.  *See, e.g.*, EDVA Action, ECF No. 1-2 at 2.  These allegations more than satisfy the standard for "malice" at the pleading stage.  *Radu*, 302 Mich. App. at 378–79.

In fact, this Court previously analyzed a similar immunity provision under the MIC with a malice exclusion and determined that resolving whether defendant acted with malice was "not appropriate on a motion to dismiss."  *Marks One Car Rental,*

---

[7]  Ignoring those allegations, HLP instead argues AIS intentionally did not attach HLP's emails to its Complaint, suggesting that omission was intentional to obfuscate the seriousness of its conduct.  ECF No. 16 at 25.  But AIS was not required to attach the emails, which support and confirm AIS's allegations in any event.  Fed. R. Civ. P. 8(a).

-13-

*Inc. v. Auto Club Grp. Ins. Co.*, 55 F. Supp. 3d 977, 983–84 (E.D. Mich. 2014) (denying motion to dismiss that asserted immunity under the MIC, specifically, Section 500.4509(3)).  There, as here, the complaint "set[ ] forth sufficient facts to make a plausible finding that the statements made about plaintiffs were done with malice." *Id.* at 984.  As in *Marks*, AIS "ha[s] plead[ed] malice" and, as such, HLP's motion must be dismissed.  *Id.*

HLP's own emails confirm that it acted with malice.  HLP repeatedly told Anthem that AIS billed Code S9328 for services not rendered – a statement it had no basis to make and that is flatly false.  ECF No. 16-2 at 9.  HLP's other knowingly false statements accusing AIS of committing fraud were also without any proper basis or support, further demonstrating its malice.  *See, e.g.*, ECF No. 16-2 at 2 (informing Anthem that AIS uses "various 'models' . . . to induce the practice to use AIS"; that "AIS may not be in compliance" with the "Anthem Provider Agreement").  HLP even said that *AIS violated state and federal regulations* without identifying them, let alone explaining how AIS's conduct violated those regulations, which was plainly reckless.  ECF No. 16-2 at 2.  As such, HLP's statements were false or, at the very least, made "with reckless disregard of its truth or falsity." *Radu*,

302 Mich. App. at 378–79.[8]

## II.   AIS Has Sufficiently Alleged Its Tortious Interference Claims.

HLP next argues that AIS has not alleged plausible claims for tortious interference because it did not "plead either a *per se* wrongful act or a lawful act done with malice and without legal justification." ECF No. 16 at 28.  In other words, HLP contends only that AIS failed to sufficiently allege the third element of its tortious interference claim.  ECF No. 16 at 28 & 32–35.[9]  HLP is mistaken.

To survive a motion to dismiss on a tortious interference with a contract claim, a plaintiff need only allege "the existence of a contract," that a counterparty "breached" the contract, and an "an unjustified instigation of the breach by the defendant."  *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 90 (2005) (citations omitted).  Similarly, a tortious interference with a business relationship claim also requires the existence of a valid business relationship, "knowledge" of the relationship, an "intentional interference by

---

[8]  While HLP insists its conduct was not malicious simply because it qualified them as "opinions," ECF No. 16 at 24–26, the MIC in no way immunizes false or reckless "opinions," *see* Mich. Comp. Laws Ann. § 500.4509(1).

[9]  Because HLP did not challenge the first and second elements for AIS's tortious interference claims in its motion to dismiss, ECF No. 167 at 26–29, it has waived arguing otherwise on reply, *Sims v. Piper*, No. 07-14380, 2008 WL 3318746, at *4–5 (E.D. Mich. Aug. 8, 2008) (refusing to consider arguments the defendant failed to raise in his motion to dismiss and raised for the first time in his reply brief).

defendant inducing a breach or termination of the relationship," and resulting damages. *Marks One Car Rental, Inc.*, 55 F. Supp. 3d at 985.

In alleging the intentional interference element, a plaintiff must allege "the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Id.* (citation omitted). In other words, the plaintiff need only allege the "interference was improper." *Id.*

AIS has more than alleged that in its Complaint. Cmplt. ¶¶ 46–74 & 86–115. Among other allegations, AIS alleges that HLP knowingly and willfully made false statements and encouraged Anthem – and other payors – to amend and enforce their provider agreements to exclude payments for AIS's claims and services, all with the specific intent of diminishing AIS's competitive advantage and position in the market. *Id.* ¶¶ 50, 53, 90, 92, 104, 105 & 111. Nothing more is required for AIS's claims to proceed. *Marks One Car Rental, Inc.*, 55 F. Supp. 3d at 985.

HLP nevertheless contends that "[r]eporting a legitimate concern about insurance fraud is lawful, justified, and encouraged." ECF No. 16 at 28; *see id.* at 32. But there is nothing lawful about making false statements about a healthcare provider to induce an insurance company to breach the parties' contract. And, here, AIS alleges that HLP did just that. Cmplt. ¶¶ 66 & 90; ECF No. 16-2 at 9; *see supra* at 14–15. As AIS alleges, HLP contacted "Anthem – and other payors – with the

-16-

sole motivation of harming AIS and its contractual and business relationships." Cmplt. ¶ 46. HLP "falsely accused AIS of improper billing practices," *id.* ¶¶ 47 & 48, and contacted Anthem with full knowledge of its contract with AIS "with the specific purpose of harming AIS and its market position." *Id.* ¶¶ 51 & 52. HLP not only sought to eliminate AIS's competitive advantage over others, but also proposed the very methods that Anthem could employ to do so – namely, issuing unilateral and unconscionable amendments. *Id.* ¶¶ 53 & 56.

HLP's cases are readily distinguishable and support denying its motion. ECF No. 16 at 28. For example, in *Knight Enter. v. RPF Oil Co.*, 299 Mich. App. 275, 279 (2013), the Michigan Court of Appeals considered whether the plaintiff's evidence *at trial* was sufficient to establish that defendant had tortiously interfered with the plaintiff's contractual relationship. But aside from the fact the case was decided on the merits, the defendant in *Knight* did not induce another party to breach its contract with the plaintiff. *See Knight Enter.*, 299 Mich. App. at 281. Instead, the other party sued the plaintiff to avoid his contractual obligations based on the plaintiff's actions alone. *Id.*[10] And even then, the claims survived. *Id.* at 278–79.

---

[10] HLP's reliance on *Elias v. Fed. Home Loan Mortg. Corp.*, 581 F. App'x 461 (6th Cir. 2014), is also unavailing. ECF No. 16 at 27–28. Unlike AIS which denies the veracity of HLP's false statements to this day, the plaintiff in *Elias* admitted that he engaged in the very conduct at issue, which led to the lost contract and business opportunities. *Elias*, 581 Fed. App'x at 465. In other words, the plaintiff's own conduct interfered with his contractual and business relationships. *Id.*; *see also*

Indeed, AIS's case is much like *Amphion, Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d 943 (E.D. Mich. 2003).  There, the plaintiff alleged that the defendant and its attorney interfered with the plaintiff's business relationships.  *Amphion, Inc.*, 285 F. Supp. 2d at 944–45.  Critically, this Court denied the motion to dismiss the tortious interference claim because, under the Michigan Rules of Professional Conduct, it is unethical for lawyers to make false statements of material fact to a third party, and "unethical conduct" is wrongful *per se*.  *Id.* at 949.  As the Court explained, "an allegation of false statements is therefore sufficient to state a claim for tortious interference."  *Id.*  And because the plaintiff alleged that the defendant engaged in this conduct to " 'purposefully destroy' [the plaintiff's] business relationships," the Court concluded the plaintiff sufficiently alleged malice under Michigan law.  *Id.*

So too here.  AIS has plausibly alleged that HLP engaged in the *per se* wrongful act of falsely reporting to Anthem and other payors that AIS breached the parties' agreement and engaged in billing fraud.  Cmplt. ¶¶ 46–74 & 86–115.  And HLP did so to induce Anthem to breach its contract with AIS to the benefit of its clients, which Anthem subsequently did.  *Id.*  These allegations demonstrate conduct that is *per se* wrongful.  *Marks One Car Rental, Inc.*, 55 F. Supp. 3d at 985; Cmplt. ¶¶ 46–74 & 86–115.

---

*Mourad v. Marathon Petroleum Co. LP*, 129 F. Supp. 3d 517, 523 (E.D. Mich. 2015) ("In the instant case, Plaintiffs do not allege the doing of an act wrongful per se.").

HLP further argues the Opinion issued in the EDVA Action justifies its tortious interference. ECF No. 16 at 26–29, 33. But that Opinion confirms that there is a factual dispute regarding whether AIS's claims for reimbursement under Code S9328 were payable under its original contract with Anthem. *See* EDVA Action, ECF No. 256 at 10–11. And HLP first contacted Anthem in August 2020 and again in May 2021, ECF No. 16-2 at 2 & 9, when the original contract was effective. Put simply, HLP reported to Anthem what it perceived was AIS's breach of contract, even though any such breach was and still is factually disputed, and made false statements to induce Anthem to initiate its own investigation and breach its contract.

Left with nothing else, HLP also tries to make much of an isolated allegation that described its numerous false statements as defamatory, contending any such claim must fail because those defamatory statements were not identified with particularity, as required by Michigan law. ECF No. 16 at 33. But AIS has not alleged a free-standing claim for defamation. So, the only question is whether AIS has sufficiently pled its existing claims for tortious interference with its contractual and business relationships/ expectancy. The answer is yes.[11]

---

[11] While HLP asserts it may later invoke or argue for dismissal based on anti-SLAPP statutes and other laws from other states, those arguments are waived given it did not present those arguments in its opening brief. *See* ECF No. 16 at 35 n.4; *Sims*, No. 07-14380, 2008 WL 3318746, at *4–5.

## **CONCLUSION**

The Court should deny HLP's Motion, or alternatively, grant AIS leave to amend to remedy any deficiencies that the Court may identify.

Dated: April 2, 2024

<div style="margin-left:40%">

/s/ Larry R. Jensen
Larry R. Jensen
Hall, Render, Killian, Heath, & Lyman, P.C.
101 W. Big Beaver Rd., Suite 745
Troy, MI 48084
(248) 740-7505
ljensen@hallrender.com

Paul Werner
Imad Matini
Sheppard, Mullin, Richter & Hampton LLP
2099 Pennsylvania Ave. NW, Ste. 100
Washington, D.C. 20006
(202) 747-1931
pwerner@sheppardmullin.com
imatini@sheppardmullin.com

</div>

## LOCAL RULE CERTIFICATION

I, Larry R. Jensen, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).

/s/ Larry R. Jensen
Larry R. Jensen
Hall, Render, Killian, Heath, & Lyman, P.C.
101 W. Big Beaver Rd., Suite 745
Troy, MI 48084
(248) 740-7505
ljensen@hallrender.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 2, 2024, Defendant's counsel was served with

the foregoing document through the Court's Electronic Case Filing System.

By:    <u>*/s/ Larry R. Jensen*</u>
         Larry R. Jensen