UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| BOND PHARMACY, INC., *d/b/a* AIS HEALTHCARE, | ) ) ) | Case No. 2:23-cv-13069 |
| Plaintiff, | ) ) | Hon. Linda V. Parker Mag. David R. Grand |
| v. | ) ) | |
| THE HEALTH LAW PARTNERS, P.C. | ) ) ) | |
| Defendant. | ) ) | |

**Defendant's Reply Brief
in support of Motion to Dismiss**

*Oral Argument Requested*

David C. Anderson (P55258)
Jeffrey R. Hicks (P74279)
Collins Einhorn Farrell
Phone: (248) 355-4141
David.Anderson@ceflawyers.com
Jeffrey.Hicks@ceflawyers.com
Attorneys for The Health Law Partners

Robert T. Rhoad
Nichols Liu LLP
Phone: (202) 846-9807
rrhoad@nicholsliu.com
Co-counsel for The Health Law Partners, P.C.

May 7, 2024

i

## Table of Contents

Index of Authorities ................................................................................................................ iii

Introduction ............................................................................................................................. 1

Rebuttal Arguments ................................................................................................................ 1

    I. Bond mishandles the controlling legal standards. ........................................................ 1

    II. HLP is entitled to immunity under the Michigan Insurance Code. ......................... 2

    III. HLP is entitled to immunity under the HCFCA. ....................................................... 6

    IV. Bond has failed to properly state claims for tortious interference. ......................... 7

    V. Bond's waiver argument fails. ........................................................................................ 8

Conclusion and Request for Relief ...................................................................................... 10

Certificate of Service .............................................................................................................. 11

# Index of Authorities

## *Cases*

*ABC Supply Co. v. River Rouge*, 549 N.W.2d 73, 74 (1996) (Mich. Ct. App. 1996).......... 6

*Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 383 (2003) ................................................................................................................................ 7

*Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ................................................................. 5, 8, 10

*Ashh, Inc. v. All About It, LLC,* 475 F. Supp. 3d 676 (E.D. Mich. 2020) ..................... 1, 2

*Berry v. Chrysler Corp.*, 150 F.2d 1002, 1003 (6th Cir. 1945).................................................. 9

*Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313 (1971) ............................ 9

*Cell Therapeutics, Inc. v. The Lash Grp., Inc.*, No. C07-0310JLR, 2010 WL 3064424 ....... 10

*Dalley v. Dykema Gossett*, 788 N.W.2d 679, 696 (Mich. Ct. App. 2010) ............................. 3

*General Elec. Credit Corp v. Wolverine Ins.,* 362 N.W.2d 595, 601 (Mich. 1984).................. 3

*In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014).................................... 2, 8

*Knight Enterprises v RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013)................ 3

*Marks One Car Rental, Inc v Auto Club Grp. Ins,* 55 F.Supp.3d 977, 983-984 (E.D. Mich. 2014) ........................................................................................................................ 4, 5, 6

*Osler v. Huron Valley Ambulance Inc.*, No. 08-14272, 2009 WL 10680175, at *1 (E.D. Mich. Jan. 20, 2009) ....................................................................................................... 10

*Radu v. Herndon & Herndon Investigations, Inc.*, 838 N.W.2d 720, 729 (Mich. Ct. App. 2013) ............................................................................................................................. 5, 8

*Roberts v. Mecosta Co. Gen. Hosp.*, 642 N.W.2d 663, 667 (Mich. 2002)............................... 7

*Spurlock v. Thompson*, 330 F.3d 791, 796 (6th Cir. 2003) ..................................................... 1

*Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 650 (6th Cir. 2013).................... 1

***Statutes***

MCL 752.1008 ............................................................................................................. 7

MCL 500.4503(1)(c)-(d) ............................................................................................. 5

MCL 500.4509 ......................................................................................................... 4,6

MCL 752.1008a .......................................................................................................... 8

***Rules***

Rule 12(b)(6) .................................................................................................... 2, 3, 11

## Introduction

Bond's Response offers no compelling reason why HLP is not immune from this suit. Nor does it present a plausible claim of tortious interference. Instead, it misstates the controlling legal standards and then makes naked allegations of malice/bad-faith untethered to any factual support. Rather than defending its threadbare allegations, the Response doubles down by simply heaping on more conclusory allegations. Bond fails to satisfy the most fundamental (and heightened) pleading standards required by *Twombley/Iqbal*, *Mourad*, *Radu*, and *BPS Clinical* and their progeny. For all these reasons, and those outlined in HLP's moving brief, the Court should dismiss the Complaint with prejudice.

## Rebuttal Arguments

### I. Bond mishandles the controlling legal standards.

To begin with, Bond Pharmacy misstates the immunity standards by relying on *Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 650 (6th Cir. 2013) and *Spurlock v. Thompson*, 330 F.3d 791, 796 (6th Cir. 2003). Neither of these cases apply. They both deal with Eleventh Amendment sovereign immunity—a different type of immunity. Thus the Court should reject (and admonish) Bond's attempt to misstate the controlling authority and hide countervailing authority.

Similarly, Bond mishandles the 12(b)(6) standard. It relies on *Ashh, Inc. v. All About It, LLC,* 475 F. Supp. 3d 676 (E.D. Mich. 2020) to support its proposition that "the Court may consider only the Complaint and any exhibits attached thereto, or risk

1

converting the motion into one for summary judgment." ECF No. 18, PageID.211-12. In doing so, Bond conspicuously omits the critical part of the quoted language:

> [H]owever, when a court is presented with a 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss *so long as they are referred to in the Complaint and are central to the claims contained therein.*

*Ashh*, 475 F. Supp. 3d at 678 (*emphasis added on language omitted by Bond*). The Sixth Circuit has further elaborated on its support for this proposition, holding that if "[w]ere courts to refrain from considering such documents, **complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure.** *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014).

Yet Bond Pharmacy's most glaring misuse of *Ashh* is that it omitted *Ashh*'s heightened pleading standard to survive a motion to dismiss under Rule 12(b)(6) stage. *Ashh* held that a court should (1) "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth;" and (2) "assume the veracity [of the remaining allegations] and determine whether they plausibly give rise to an entitlement to relief." *Id.* Bond omitted this heightened pleading standard and instead opted to include a misleadingly edited quotation seeking to keep the emails between HLP and Anthem VA out of the Court's sight. Dismissal is appropriate.

II. **HLP is entitled to immunity under the Michigan Insurance Code.**

2

Bond makes two arguments against HLP's claim to immunity under Mich. Comp. Laws § 500.4509. It first says that the provision doesn't apply because HLP was merely reporting a potential breach of contract, and not actual insurance fraud under the statute. ECF No. 18, PageID.9-11. Alternatively, Bond claims that the immunity provision doesn't apply because HLP acted with malice by making false statements. *Id.* Both arguments fail, and HLP is entitled to qualified immunity.

*First*, since all HLP did was report that Bond submitted claims for services that it rendered and potentially breached its contract, then Bond has failed to state a claim for both tortious interference of a contract or business relationship. Those claims require substantially more than benign statements of fact to give rise to a cause of action. *Knight Enterprises v RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013) (requiring the intentional doing of a *per se* wrongful act—*i.e.*, one that is never justified under any circumstance—or doing a lawful act with malice); *Dalley v. Dykema Gossett*, 788 N.W.2d 679, 696 (Mich. Ct. App. 2010) (requiring an illegal, unethical, or fraudulent act). Based on Bond's position, the Court should dismiss the complaint.

*Second*, the emails alerted various health insurers that, based on client observation, Bond Pharmacy had apparently devised several complicated payment schemes to capture in-office infusion therapy, which wasn't compensable, to expand its market share beyond the permitted boundaries. The actions detailed in the emails acts constitute insurance fraud. *General Elec. Credit Corp v. Wolverine Ins.,* 362 N.W.2d 595, 601 (Mich. 1984) (defining fraud in part as the intentional perversion of truth to induce

3

another to part with something of value); MCL 500.4503(1)(c)-(d) (stating that fraudulent insurance acts includes presenting or conspiring to present to any insurance company a claim for payment knowing that the claim has material false information). Thus, the conduct suspected and reported in the emails came within the meaning of suspected insurance fraud for immunity despite Bond's characterizations.

*Third*, Bond lacks facts actually showing malice. The only "factual support" given by Bond is Bond's own continued mischaracterization of the HLP emails. It fails to discuss the actual text of the emails or provide factual allegations to show how the statements in the emails were false in any way. Bond says, citing *Marks One Car Rental, Inc v Auto Club Grp. Ins,* 55 F.Supp.3d 977, 983-984 (E.D. Mich. 2014) that trial courts can't determine malice on a motion to dismiss. This is not so.

Bond's characterization of the emails as false, and thus malicious, is unavailing. For example, Bond says that "HLP repeatedly told Anthem that AIS billed Code S9328 for services not rendered—a statement it had no basis to make and that is flatly false." (Response at 14, citing ECF No. 16-2 at 9). But that's not what the HLP email stated at that citation or anywhere else. It stated that it had a "suspicion that AIS was misusing the S9328 billing code[.]" Exhibit A, Subpoena documents, RE 16-2, PageID 135.

Bond has not and cannot show that what the HLP stated in the email was false. That would require disproving the HLP's subjective state of mind that it suspected wrongdoing, which it can't do. In discussing malice, Bond likewise ignores the distinction between opinions and facts. HLP's emails express non-actionable opinions

4

about Bond's billing practices and their propriety—not false assertions of fact. The MIC's malice exception only applies to "false information." MCL 500.4509. Opinions cannot be "false." No allegations suggest HLP did not genuinely hold the opinions it expressed or could not have held them. Disagreement with HLP's views is not enough to show malice, especially when two courts have now held that they agree with HLP's views. No facts plead by Bond plausibly suggest HLP believed or knew its concerns were false when raised.

As such, Bond's characterization of the emails as false fails as a matter of law. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) (conclusory allegations are not "entitled to be assumed true."). And the actual language in the emails doesn't show malice to overcome qualified immunity. As *Iqbal* explained, qualified immunity frees a defendant "from the concerns of litigation, including avoidance of disruptive discovery." *Iqbal*, 556 U.S. at 686. So its applicability is appropriate to consider on a motion to dismiss if the pleadings fail to state a claim. *C.f. Marks One*, 55 F. Supp. 3d at 983-984 (pleadings actually showed malice and thus created a genuine issue for discovery on the tort claims).

Here, the pleadings' conclusory allegations are not enough to state a claim. And the actual emails do not show malice as a matter of law under the heightened standard in *Radu v. Herndon & Herndon Investigations, Inc.*, 838 N.W.2d 720, 729 (Mich. Ct. App. 2013) (requiring facts showing that the person furnished information with knowledge of its falsity or with reckless disregard of its truth or falsity). So even if Bond had inserted the actual wording from the emails into the complaint, it still would have not

5

shown malice under *Radu*. Thus, Bond contrasts with *Marks One*, where plaintiff's pleadings had factual allegations showing malice and created a genuine issue on the tort claims.

### III. HLP is entitled to immunity under the HCFCA.

It cannot seriously be disputed that, in its emails to Anthem, HLP was "providing information . . . or cooperating with . . . an investigation or examination[1] under [the HCFCA]." By its plain language, HLP (a person) is not subject to civil liability (civil immunity) for providing information (the content of the emails) or cooperating (communications, including the emails) with Anthem's investigation/examination of alleged fraud covered by this act (HCFCA).

Contrary to Bond's argument, the immunity statute neither ties nor limits immunity to state investigations *authorized* under MCL § 752.1008. Nor does the HCFCA preclude parties other than the State from investigating or examining fraud. Bond provides no authority for its tortured reading. The HCFCA combats false claims submitted to the state *and to* private insurers. "A court must look to the object of the statute and the harm that it was designed to remedy and apply a reasonable construction in order to accomplish the statute's purpose . . . ." *ABC Supply Co. v. River Rouge*, 549 N.W.2d 73, 74 (1996) (Mich. Ct. App. 1996) (citations omitted). A limitation like the one argued by Bond may not be read into a clear statute that is not within the manifest

---

[1] Bond Pharmacy also implicitly argues that "or examination" is superfluous language, to be ignored against statutory construction principles. ECF No. 18, PageID.213-14

6

intent of the Legislature as derived from the language of the statute itself. *See Roberts v. Mecosta Co. Gen. Hosp.*, 642 N.W.2d 663, 667 (Mich. 2002).

In the EDMI, Blue Cross Blue Shield of Michigan sued Bond under the HCFCA after investigating them since 2019 for the issues HLP raised in its email to Anthem VA. *Blue Cross Blue Shield of Michigan v. Bond Pharmacy, Inc. d/b/a Advanced Infusion Solutions*, 2:21-cv-10076-DPH-KGA, ECF No. 41. The EDMI held that BCBSM's HCFCA claims against Bond survive at the motion to dismiss phase. *Id.* at PageID.481. So, after "investigating" and "examining" Bond under "this act" (MCL 752.1008a), BCBSM may sue Bond under "this act." *Id.* Bond cannot credibly argue that insurers cannot "investigate" or "examine" under the Act, or that HLP is not entitled to immunity under the Act for reporting to an insurer.

Bond ignores the damning and harmful opinions and findings in its own directly-related litigations, arbitration matters, and its ongoing criminal investigation(s) where it is represented by Sheppard Mullin**, the same counsel here**. The Court should not tolerate this conduct by a litigant. The law compels dismissal with prejudice.

### IV. Bond has failed to properly state claims for tortious interference.

As stated in HLP's moving brief, Bond has not pled an essential element of tortious interference—i.e., "wrongful" conduct, by either an illegal act or a lawful act committed with malice and without justification. *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 383 (2003). Bond concedes HLP's reporting of suspected fraud was not illegal and, the allegations fail to support a claim of malice.

7

Bond thinks it met the heightened pleading standard and that it "more than alleged" that HLP acted improperly or with malice. But rather than provide specific examples, citations, or references to these allegations, Bond deployed a "quantity over quality" approach, hoping that regurgitating the conclusory allegations in its Complaint enough times will magically turn them from conclusory opinion to fact. This strategy fails to meet the pleading standards required to allege malice as stated in *Mourad*, *Radu*, and *Iqbal*, and Bond's claims for tortious interference fail as a matter of law. The Court should dismiss this case. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014).

**V. Bond's waiver argument fails.**

Bond also argues that "Because HLP did not challenge the first and second elements for AIS's tortious interference claims in its motion to dismiss, ECF No. 167 at 26–29, it has waived arguing otherwise on reply." Bond is wrong.

At the time of HLP's Motion to Dismiss, the EDVA had ruled at the summary judgment phase that the amended contract was unambiguous, that Bond had breached the contract, and that Anthem VA had not, ultimately granting Anthem VA's Motion for Summary Judgment on the issues. *See* EDVA Action, Document 256. The claims dismissed in the EDVA Action were the vast-bulk of Bond's dispute with Anthem VA (leaving de minimis claims to be resolved at trial). The EDVA Court dismissed all claims in favor of Anthem in 5 of the 6 claim categories, leaving only claims relating to the pre-amendment per diem claims (finding that the language in the policy was ambiguous enough to go to trial). *Id.* Given said findings were adverse to Bond, Bond cannot

8

plausibly plead in good-faith that HLP acted with bad-faith/knowledge, or otherwise provided false factual information.

Then between the time that HLP moved to Dismiss and Bond responded, Bond and Anthem signed a settlement agreement, in which the parties dismissed their remaining claims as they relate to the pre-amendment disputes with prejudice. (**Exhibit C** – Joint Stipulation of Dismissal with Prejudice – EDVA Action). This development gives rise for HLP to challenge, at this stage, the "breach of contract," the "causing a breach," and "damages" elements of the tortious interference claims. In EDVA, Bond knew it had lost and was prevented from showing essential elements **of its claim against Anthem VA**.[2] HLP cannot, and should not, be forced into the shoes of Anthem VA to litigate whether its contract with Bond was breached, when Bond has lost on the issue, and has abandoned its own ability to do so.

The Supreme Court has long recognized that non-parties may defensively invoke collateral estoppel. *Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313 (1971). And the Sixth Circuit has held that motions based on affirmative defenses may be brought under Rule 12 or 56, depending on the source of the factual predicate for such motions. See *Berry v. Chrysler Corp.*, 150 F.2d 1002, 1003 (6th Cir. 1945)

---

[2] Notably, there was no mention of HLP, Dindoffer, or the HLP emails in any of Bond Pharmacy's trial materials filed in the EDVA Action. Specifically, Bond Pharmacy did not list HLP or Dindoffer on any of its trial witness lists, nor did it include the emails on any of its trial exhibit lists. EDVA Action Documents 94 and 97. And, Bond Pharmacy failed to join HLP as a necessary party in that action.

9

(adjudicating a statute of limitations defense), cited by *Osler v. Huron Valley Ambulance Inc.*, No. 08-14272, 2009 WL 10680175, at *1 (E.D. Mich. Jan. 20, 2009).

Here, by way of the EDVA summary judgment and settlement, Bond will be prevented from arguing that Anthem VA's contract was breached, and that they incurred damages, whether at the 12(b)(6) stage or at the Rule 56 stage. By executing a settlement dismissing the claims with prejudice, Bond has effectively precluded a finding of breach of contract. *Cell Therapeutics, Inc. v. The Lash Grp., Inc.*, No. C07-0310JLR, 2010 WL 3064424, at *5 (W.D. Wash. Aug. 3, 2010) (examining the collateral estoppel effect of a FCA settlement on a non-party's liability to the plaintiff).

### Conclusion and Request for Relief

The process is punishment. With its barrage of lawsuits and arbitrations, Bond understands and counts on this. For qualified civil immunity statutes to have any meaning, the Supreme Court has held that they must be "both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation.'" *Iqbal*, 556 U.S. at 686 (citation omitted). Bond does not meet its pleading burdens. For all the above reasons, HLP respectfully requests that the Court grant its motion and dismiss Bond's complaint in its entirety with prejudice.

Respectfully submitted,

/s/ David C. Anderson  
DAVID C. ANDERSON (P55258)  
JEFFREY R. HICKS (P74279)  
*Attorneys for The Health Law Partners, P.C.*  
Dated: May 7, 2024

/s/ Robert Rhoad  
ROBERT RHOAD  
*Co-Counsel for The Health Law Partners, P.C.*

## Certificate of Service

I hereby certify that on May 7, 2024, I electronically filed the foregoing instrument with the Clerk of the Court using the ECF system, and that a copy was electronically served on all counsel of record via the ECF system and to any counsel not registered to receive electronic copies from the court, by enclosing same in a sealed envelope with first class postage fully prepaid, addressed to the above, and depositing said envelope and its contents in a receptacle for the U.S. Mail.

>   */s/ David C. Anderson*
>   DAVID C. ANDERSON (P55258)
>   JEFFREY R. HICKS (P74279)
>   *Attorneys for The Health Law Partners, P.C.*

Dated: May 7, 2024

## CERTIFICATE OF COMPLIANCE

I, David C. Anderson, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10 1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

>   */s/ David C. Anderson*
>   COLLINS EINHORN FARRELL PC
>   DAVID C. ANDERSON (P55258)
>   David.Anderson@ceflawyers.com

Dated: May 7, 2024

11