UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOND PHARMACY INC.,
d/b/a AIS HEALTHCARE,

        Plaintiff,

v.

        Case No. 23-cv-13069
        Honorable Linda V. Parker

THE HEALTH LAW PARTNERS, P.C.,

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF NO. 16)**

On December 4, 2023, Plaintiff Bond Pharmacy Inc., d/b/a as AIS Healthcare ("AIS"), initiated this action against Defendant The Health Law Partners, P.C. ("HLP"). In its Complaint, AIS alleges that HLP tortiously interfered with AIS's contracts (Count I) and business relations/expectancies (Count II). AIS also seeks a judgment pursuant to 28 U.S.C. § 2201, declaring that HLP tortiously interfered with AIS's contractual and business relations (Count III).

The matter is presently before the Court on HLP's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 16.) The motion is fully briefed. (ECF Nos. 18, 21.) The Court is dispensing with oral argument with respect to HLP's motion pursuant to Eastern District of Michigan Local Rule 7.1(f).

I. **Standard of Review**

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court "construes the complaint in the light most favorable to the plaintiff," *Gunasekera*

*v. Irwin*, 551 F.3d 461, 466 (6th Cir. 209) (cleaned up), and must "accept all of the complaint's factual allegations as true," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668; *L.C. v. United States*, 83 F.4th 534, 550 (6th Cir. 2023) (internal quotation marks and citation omitted) (explaining that the court "need not accept as true legal conclusions or unwarranted factual inferences"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 556 (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Elec. Merchant Sys. LLC v. Gaal*, 58 F.4th 877, 883-84 (6th Cir. 2023) (finding that it was not improper for the district court to consider the plaintiff's

3

filings in a bankruptcy case without converting the motion to dismiss into a motion for summary judgment).

When such materials "contradict[] allegations in the complaint, rendering them implausible, 'the exhibit trumps the allegations.'" *Nolan v. Detroit Edison Co.*, 991 F.3d 697, 707 (6th Cir. 2021) (quoting *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012)); *see also Gulfside Casino P'ship v. Churchill Downs Inc.*, 861 F. App'x 39, 42 (6th Cir. 2021) (citing *Cates v. Crystal Clear Tech., LLC*, 874 F.3d 530, 536 (6th Cir. 2017)). "If, on the other hand, the document provides support for both parties' version of events, [the court must] view the facts in the light most favorable to the plaintiff." *Nolan*, 991 F.3d at 707-08 (citations omitted).

## II. Factual Background

AIS is a private compounding pharmacy and a leading provider of home infusion therapy ("HIT") services. (ECF No. 1 at PageID. 6 ¶ 25.) HIT involves the dispensing and infusion of medication by non-oral means. (*Id.* ¶ 26.) AIS's specialized HIT enables patients to receive custom medications through surgically-implanted intrathecal pumps that deliver continuous targeted relief without requiring patients to leave home. (*Id.* ¶ 27) HIT is typically prescribed for patients with chronic pain resulting from cancer, multiple sclerosis, spinal cord injuries, or other debilitating conditions. (*Id.* at PageID. 6 ¶ 29.)

Intrathecal pumps can administer medication to a patient daily for up to 180 days before needing to be refilled. (*Id.* at PageID. 7 ¶ 32.) A medical professional must refill the medication. *See Bond Pharmacy, Inc. v. Anthem Health Plans of Va.*, No. 1:22-cv-1343, 2024 WL 712532, at *1 (E.D. Va. Feb. 20, 2024). This may occur at a physician's office or the patient's home. *Id.*

AIS has entered into provider agreements with insurance companies which pay for their members' HIT services. (ECF No. 1 at PageID. 8 ¶¶ 40-41.) Anthem is one of those entities.[1] (*Id.*) Anthem agreed to cover intrathecal HIT services provided to its members and to pay AIS for those services in accordance with the provider agreements between it and AIS. (*Id.* ¶ 41.) According to AIS, the provider agreements are in accordance with the National Home Infusion Association's per diem reimbursement model. (*Id.*) Under that model, AIS bills a specific billing code—HCPCS Code S9328—each day a patient has access to a prescribed therapy (i.e. AIS medication).[2] (*Id.* at PageID. 9 ¶ 42.)

Code S9328 covers "home infusion therapy, implanted pump pain management infusion; administrative services, professional pharmacy services,

---

[1] AIS indicates that Anthem is now known as Elevance Health. (*See* ECF No. 1 at PageID. 8 ¶ 40.) Nevertheless, the parties and thus the Court refer to this entity as Anthem.

[2] As discussed *infra*, there is a disagreement between AIS and providers as to when it is proper to use Code S9328.

care coordination, and all necessary supplies and equipment (drug and nursing visits coded separately), per diem." (*Id.* ¶ 43 (brackets, footnote, and quotation marks removed)).) AIS alleges that Code S9328 may be billed each day a patient is on the pump and has access to AIS's medication(s). (*Id.* ¶ 44.)

Beginning at some point in 2020, HLP contacted Anthem entities by telephone and in writing accusing AIS of improper billing practices. (*See id.* at PageID. 9-13 ¶¶ 46-67.) HLP is a law firm which represents clients in the pharmacy industry and physician practices that administer intrathecal pain medications in-office for patients with HLP. (*Id.* at PageID. 3 ¶ 6; ECF No. 16-2 at PageID. 128.) HLP attaches its written communications with the Anthem entities to its motion to dismiss.³ (*See* ECF No. 16-2.)

In those communications, HLP indicates that its "[c]lients have become aware of certain alleged practices/billings of AIS" which, in HLP's "opinion,

---

³ "Sixth Circuit case law is very clear that courts may consider documents [attached to a defendant's motion to dismiss] that are referenced in the plaintiff's complaint and that are central to [the] plaintiff's claims." *Gulfside Casino*, 861 F. App'x at 42 (citing *Rondigo LLC v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011)); *see also Cates*, 874 F.3d at 536 (citations omitted). As the Sixth Circuit held in *Gulfside Casino*, those documents do not need to be "legal instruments" to be considered. 861 F. App'x at 42 (concluding that the district court properly considered a letter which the defendant sent the plaintiff, explaining that "[n]othing in [Sixth Circuit] case law suggests we are prevented from considering documents that are not formal legal instruments if they are referenced in the complaint and central to the plaintiff's claims," and that the Sixth Circuit "has considered less formal documents than [a l]etter before").

6

reasonably indicate[] that AIS may not be in compliance with [the payor's] coverage standards and its [agreement with AIS]." (*See, e.g.*, ECF No. 16-2 at PageID. 128.) More specifically, HLP shared its "suspicion that AIS was misusing the S9328 billing code, which relates to home infusion therapy, in scenarios that do not involve proper in-home infusion (or otherwise do not meet the requirements of the applicable code and payor requirements." (*Id.* at PageID. 135.) For example, HLP indicated that its clients had become aware of information suggesting AIS was billing for services rendered in office. (*Id.* at PageID. 128.) HLP explained that its clients described different models AIS was using when engaging with pain practices to provide AIS targeted drug delivery and/or infusion care services "to capture all of their in-office pain clinic pharmacy business (and their in-home patients) while potentially violating various payor standards and federal and state regulations." (*Id.*)

HLP emphasized that neither it nor its clients "are privy to all information regarding AIS, and cannot make this determination ourselves." (*Id*.) HLP further conveyed that "[a]lthough our clients had a good-faith suspicion that AIS was involved in improper billing and other improper practices, they (and we) lack the investigative methods that are available to large insurers, like you and like BCBS of Michigan." (*Id*. at PageID. 135.) HLP encouraged the payors to investigate the matter, conveying that it "want[s] to ensure that all affected providers in the

7

industry are treated equally, that there is not an unfair advantage to AIS in competing for physician practice in-office pain clinic pharmacy business, and that physician practice in-office pain clinics are not potentially violating laws/regulations/provider manuals in their dealing with AIS." (*Id*. at PageID. 128.)

AIS alleges that HLP's statements to the payor entities were false and that HLP knew they were false when it made them. (*See, e.g.* ECF No. 1 at PageID. 10-15 ¶¶ 47, 50, 58, 59, 67, 77-79.) AIS further alleges that HLP was aware of AIS's contracts and business relationships with payors, and that HLP made the false statements to induce the payors to breach those contracts and relationships. (*See, e.g., id*. at PageID. 15 ¶ 80.)

In response to HLP's communications and/or independently, Anthem and other payor entities investigated AIS's billing practices and apparently concluded that claims were improperly billed. *See, e.g.*, *Blue Cross Blue Shield of Mich. v. Bond Pharmacy, Inc.*, No. 21-cv-10076, 2024 WL 1349073, at *2 (E.D. Mich. Mar. 29, 2024) (denying AIS's motion to dismiss Blue Cross Blue Shield of Michigan's claims alleging *inter alia* fraud in connection with AIS's Code S9328 billing practices). In fact, Blue Cross Blue Shield of Michigan ("BCBSM") had initiated an investigation into AIS's billing practices in 2019. *Id.* These investigations led to several lawsuits concerning AIS's billing practices, including the one brought by BCBSM cited above and a matter in the District Court for the

8

Eastern District of Virginia: *Bond Pharmacy, Inc. v. Anthem Health Plans of Va., Inc.*, No. 1:22-cv-01343 (E.D. Va. filed Nov. 23, 2022).[4]

As the District Court for the Eastern District of Virginia explains in its summary judgment decision in the above-cited case, AIS submitted per diem claims under Code S9328 for each day a patient received medication through HIT regardless of where the pump was filled. *Bond Pharmacy*, 2024 WL 712532, at *1 (Feb. 20, 2024). But payors like Anthem have taken the position that such billings are improper when medications are filled outside the patient's home. *Id*. Payors, therefore, have refused to pay AIS's claims in the absence of in-home refills. *Id*.

In ruling on the summary judgment motion filed by Anthem Health Plans of Virginia, Inc. ("Anthem Virginia"), the district court found an ambiguity in the governing provider agreement, before it was amended in December 2021. *Id*. at *3. The court reasoned: "While the Agreement allows [AIS] to bill for per diem claims submitted under Code S9328, the Agreement does not define Code S9328 in such a way that would clearly allow or prohibit [AIS] to bill the per diem claims when the pump is refilled outside of the home." *Id*. The court concluded that the extrinsic evidence did not resolve the ambiguity. *Id*. at *3-4.

---

[4] HLP lists other lawsuits related to AIS's billing practices, and indicates that there are also at least thirteen arbitrations involving the issue. (*See* ECF No. 16 at PageID. 104.)

In comparison, the district court found no ambiguity with respect to claims submitted after the parties amended the provider agreement in December 2021. *Id.* at *4. According to the court, the amendment unambiguously precluded per diem claims when the pumps are refilled outside the home. *Id.* (interpreting the post-amendment agreement to "mean[] that [AIS] may not receive per diems for any date associated with the drug therapy when the pump was refilled outside of the home, regardless of where any administration took place").

### III. An Overview of the Parties' Arguments

HLP raises several arguments in support of its motion to dismiss. First, it argues that it is entitled to qualified immunity under the Michigan Insurance Code, Mich. Comp. Laws § 500.4509. Second, HLP contends that it is entitled to civil immunity under Michigan's Health Care False Claims Act ("HCFCA"), Mich. Comp. Laws § 752.1008a. HLP next argues that AIS fails to plead facts to show that HLP acted with malice—an essential element of its tortious interference claims. Lastly, HLP argues that AIS fails to allege that HLP engaged in illegal, fraudulent, or unethical conduct, which HLP maintains also is necessary to adequately plead tortious interference.

AIS responds that HLP is not entitled to immunity because HLP acted with malice when it made false reports to Anthem and other payors. AIS further argues that HLP is not entitled to immunity because HLP reported only that AIS had

breached its agreements with the payors, while immunity protects only "information concerning suspected or completed insurance fraud." Lastly, AIS maintains that it adequately pleads that HLP knowingly communicated false information or acted with reckless disregard of the information's falsity.

## IV. Applicable Law & Analysis

The Court begins by evaluating HLP's argument that it is entitled to qualified immunity under Section 500.4509 of the Michigan Insurance Code.[5] The statute reads, in relevant part:

> A person acting without malice is not subject to liability for filing a report or requesting or furnishing orally or in writing other information concerning suspected or completed insurance fraud, if the reports or information are provided to or received from the insurance bureau, the national association of insurance commissioners, any federal, state, or governmental agency established to detect and prevent insurance fraud, as well as any other organization, and their agents, employees, or designees, unless that person knows that the report or other information contains false information pertaining to any material fact or thing.

Mich. Comp. Laws § 500.4509(1). The Michigan Insurance Code defines a "person" to include a "company, association, organization, . . . and any other legal entity." *Id*. § 500.4501(f). An "organization" is "an organization or internal

---

[5] The Court finds it unnecessary to address whether HLP also is entitled to immunity under the HCFCA.

department of an insurer established to detect and prevent insurance fraud." *Id*. § 500.4501(e).

The Court quickly dispenses with AIS's argument that HLP did not report "suspected or completed insurance fraud" but only a potential breach of contract. The actual communications reflect otherwise. While HLP may have avoided the term "fraud" when describing its suspicions, it described billing practices that it asserted BCBSM found "fraudulent." (*See* ECF No. 16-2 at PageID. 135, 167.) Further, to its communications, HLP attached the complaint BCBSM filed in federal court, in which BCBSM accused AIS of health insurance fraud. (*Id*. at PageID. 140-64.) Further, HLP communicated that AIS may be engaging in "improper billing" and conduct "potentially violating . . . federal and state regulations." (*Id*. at PageID. 128.)

Turning to the issue of malice, the Michigan Insurance Code does not define the term. However, Michigan courts have adopted the defamation definition of the term 'actual malice,'" finding that it best comports with the Michigan legislature's purpose in enacting the qualified immunity provision. *See Radu v. Herndon & Herndon Investigations, Inc.*, 838 N.W.2d 720, 729 (Mich. Ct. App. 2013). That purpose, the state courts have found, is "to foster the free exchange of information in investigations of [insurance fraud]" and "'to protect [persons who have provided information of suspected insurance fraud] from liability for participation in this

communicative and evaluative process' if they participated without malice." *Id.* (quoting *Feyz v. Mercy Mem'l Hosp.*, 719 N.W.2d 1, 3 (Mich. 2006) (interpreting a similar qualified immunity provision in Michigan's medical peer review statute)); *see also id.* (explaining the purpose as "foster[ing] the communicative and evaluative processes related to . . . insurance-fraud prevention"). "[T]he defamation definition of the term 'actual malice,'" the Michigan courts have concluded, "is the one definition that specifically concerns and promotes honest communication." *Id.* (quoting *Feyz*, 719 N.W.2d at 14).

Under this definition, "malice exists when a person supplying information or data to the appropriate authorities, as set forth in the statutes, does so with knowledge of its falsity or with reckless disregard of its truth or falsity." *Radu*, 838 N.W.2d at 729 (citing *Feyz*, 719 N.W.2d at 17). "[I]ll will, spite or even hatred, standing alone, do not amount to actual malice." *Id.* (quoting *Ireland v. Edwards*, 584 N.W.2d 632, 640 (Mich. Ct. App. 1998)); *see also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 52 (1st Cir. 2012) (observing that "actual malice" is "legalese [that] might suggest ill will or evil motive to the uninitiated but really means knowledge of falsity or reckless disregard for the truth"). Further, "'[r]eckless disregard' is not measured by whether a reasonably prudent [person] would have published or would have investigated before publishing, but by whether the publisher in fact entertained serious doubts

13

concerning the truth of the statements published." *Radu*, 838 N.W.2d at 730 (quoting *Ireland*, 584 N.W.2d at 640). "[I]t is well settled that the failure to investigate the accuracy of a communication before publishing it, even when a reasonably prudent person may have done so, is not sufficient to establish that the defendant acted with reckless disregard for the truth." *Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533, 542 (Mich. 2010) (citation omitted). "However, a purposeful avoidance of the truth is dissimilar from the mere failure to investigate, and a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of a publication is sufficient to find reckless disregard." *Id.* (internal quotation marks, footnotes, and citations omitted).

While there is no heightened pleading standard for malice, *see* Fed. R. Civ. P. 9(b), "pleadings regarding the conditions of a person's mind, including malice and intent, remain bound by the plausibility standard of Rule 8." *Mourad v. Marathon Petroleum Co. LP*, 654 F. App'x 792, 798 (6th Cir. 2016) (citing *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012)). "Relying on *Iqbal*," the Sixth Circuit and other circuit courts, "have explained that, 'although the conditions of a person's mind may be alleged generally, the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation plausible on its face.'" *Id.* (brackets omitted) (quoting *Republic Bank & Tr.*, 683 F.3d at 247); *see also id.* (citing *Biro v. Conde*

14

*Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015) (explaining that *Iqbal* makes clear that "Rule 8's plausibility standard applies to pleading intent"); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) ("States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible."); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) ("Rule 9(b) ensures there is no heightened pleading standard for malice, but malice must still be alleged in accordance with Rule 8—a 'plausible' claim for relief must be articulated.")); *see also Schatz*, 669 F.3d at 58 (explaining that, "to make out a plausible malice claim, a plaintiff must still lay out enough facts from which malice might reasonably be inferred"). The plaintiff must allege sufficient facts to render it plausible "that the defendant made the allegedly defamatory publication with a high degree of awareness of the publication's probable falsity, or that the defendant entertained serious doubts as to the truth of the publication made." *Anonymous Joint Enter.*, 793 N.W.2d at 541-42 (internal quotation marks, footnotes, and citations omitted).

In its Complaint, AIS uses "actual-malice buzzwords," *Schatz*, 669 F.3d at 56, contending that HLP "knew" and was "aware" its statements were false, "knowingly" made false statements, and "acted . . . with malice" and "[o]ut of ill will, malice, and a specific desire to harm AIS[,]" (ECF No. 1 at PageID. 12 ¶ 59; *Id.* at PageID. 14-15 ¶¶ 77-78; *Id.* at PageID. 16-17 ¶¶ 89-91; *Id.* at PageID. 19

15

¶¶ 105, 109). These are mere legal conclusions, however, lacking supporting well-pled facts. They are indistinguishable from those found insufficient in other cases, such as *Mayfield* and *Schatz*, which the Sixth Circuit specifically has cited in the context of falsity and malice. *See Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 509 n.3 (2015).

For example, in *Mayfield*, the Fourth Circuit held that the plaintiffs' assertions that the defendants' statements "were known by [them] to be false at the time they were made, were malicious[,] or were made with reckless disregard as to their veracity" were "entirely insufficient." 674 F.3d at 377. Similarly in *Schatz*, the First Circuit held that the plaintiff's contentions that the defendant "had 'knowledge' that its statements were 'false' or had 'serious doubts' about their truth and a 'reckless disregard' for whether they were false . . . [were] merely legal conclusions, which must be backed by well-pled facts." 669 F.3d at 56; *see also Brimelow v. The N.Y. Times Co.*, No. 21-66, 2021 WL 4901969, at *2-3 (2d Cir. Oct. 21, 2021) (concluding that the plaintiff's " 'repeated and persistent denials' as to the truth [of the defendant's] statements" are insufficient to "support a plausible claim of actual malice[,]" as are references to the defendant's alleged ill will toward the plaintiff); *DF Pace v. Baker-White*, 850 F. App'x 827, 831-32 (3d Cir. 2020) (brackets and footnote omitted) ("Pace merely labels the PVP defendants' conduct as 'malicious' and alleges that they 'had knowledge of, or acted in reckless

16

disregard as to the falsity of the matter they communicated.' These conclusory allegations are insufficient.").

AIS also alleges that HLP made the statements to payor entities "with the sole motivation of harming AIS and its contractual and business relationships," "for the specific purpose of destroying AIS's reputation and contractual relationships . . . and [to] improve [HLP's] clients' positions in the market," and "[o]ut of ill will, malice, and a specific desire to harm AIS[.]" (*See, e.g.*, ECF No. 1 at PageID. 9-10 ¶¶ 46, 50, 52; *Id.* at PageID. 16 ¶ 89.) But statements like these do "not 'nudge[]' [AIS's] actual-malice claim 'across the line from conceivable to plausible[.]'" *Schatz*, 669 F.3d at 58 (quoting *Twombly*, 550 U.S. at 570). As stated earlier, these purported motives "cannot provide a sufficient basis for finding actual malice." *Brimelow*, 2021 WL 4901969, at *3 (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989)); *see also McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 360 (3d Cir. 2020) (quoting *Harte-Hanks*, 491 U.S. at 667) (explaining that "Newsweek's desire 'to increase its profits' and sluggish sales does not make out actual malice either"); *Radu*, 838 N.W.2d at 730 (quoting *Ireland*, 584 N.W.2d at 640) ("ill will, spite or even hatred, standing alone, do not amount to actual malice"). Instead, AIS must allege facts to plausibly suggest that HLP made statements to AIS's payors and third parties "with

knowledge of [the statements'] falsity or with reckless disregard of [their] truth or falsity."

The closest AIS gets to doing this is by asserting that the provider agreements permitted AIS to use Code S9328 in the manner HLP reported was suspicious or fraudulent, and that HLP was aware of AIS's business and contractual relationships with payors, like Anthem, including the provider agreements. However, as the numerous lawsuits and arbitrations between AIS and its payors reflect, even the payor entities that are parties to the provider agreements have viewed AIS's use of Code S9328 to be improper under those agreements—in other words, in the same manner as HLP. A federal district court has found ambiguity in the provider agreements with respect to this specific billing issue. Thus, HLP's purported knowledge of the terms of the provider agreements does not render it plausible that it knew its statements concerning the impropriety of AIS's billing practices were false or that the statements were made in reckless disregard of their falsity.

For these reasons, the Court finds that HLP is entitled to qualified immunity under the Michigan Insurance Code. But the failure to adequately plead malice dooms AIS's tortious interference claims even without considering qualified immunity. This is because, "to establish tortious interference with a contract or business relationship, [a] plaintiff[] must establish that the [defendant's]

18

interference was improper." *See Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003) (citations omitted); *see also Marks One Car Rental, Inc. v. Auto Club Grp. Ins. Co.*, 55 F. Supp. 3d 977, 984-85 (E.D. Mich. 2014). "The 'improper' interference can be shown either by proving (1) the intentional doing of an act wrongful per se, or (2) the intentional doing of a lawful act *with malice* and unjustified in law for the purpose of invading [the] plaintiff['s] contractual rights or business relationship." *Advoc. Org.*, 670 N.W.2d at 580 (emphasis added); *see also Marks One*, 55 F. Supp. 3d at 985.

AIS does not plead a per se wrongful act to support its tortious interference claims. "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Knight Enters. v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013) (quoting *Badiee v. Brighton Area Schs.*, 695 N.W.2d 521, 539 (Mich. Ct. App. 2005)). Reporting suspected fraud is hardly "inherently wrongful" or "unjustified under any circumstances." Thus, AIS must plead facts to show that HLP acted with malice and without legal justification, which, for the reasons discussed, it has not plausibly done.

## Conclusion

In summary, the Court finds that AIS has not alleged sufficient facts to evade HLP's qualified immunity under the Michigan Insurance Code or to plead tortious

19

interference under Michigan law.  AIS, therefore, is not entitled to a declaratory judgment.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (ECF No. 16) is **GRANTED**.

s/ Linda V. Parker<br>LINDA V. PARKER<br>U.S. DISTRICT JUDGE

Dated: September 23, 2024